Christopher Sproul (State Bar No. 126398)
Christopher Hudak (State Bar No. 282283)
Danielle Rathje (State Bar No. 300167)
ENVIRONMENTAL ADVOCATES
5135 Anza Street
San Francisco, California 94121
Telephone: (415) 533-3376
Facsimile: (415) 358-5695
Emails:  csproul@enviroadvocates.com,
christopherwhudak@gmail.com,
dnrathje@gmail.com

Fredric Evenson (State Bar No. 198059)
Ecology Law Center
P.O. Box 1000
Santa Cruz, CA 95061
Telephone: (831) 454-8216
Facsimile: (415) 358-5695
Email: evenson@ecologylaw.com

Drevet Hunt (State Bar No. 240487)
Lawyers for Clean Water, Inc.
1004 O'Reilly Avenue, Suite A
San Francisco, California 94121
(415) 813-6686
Email: drev@lawyersforcleanwater.com


Attorneys for Plaintiff
ECOLOGICAL RIGHTS FOUNDATION

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ECOLOGICAL RIGHTS FOUNDATION, a non-profit corporation, | Civil Case No. 16-cv-06987-JD |
| Plaintiff, | **FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |
| v. | |
| FEDERAL EMERGENCY MANAGEMENT AGENCY, an agency of the Department of Homeland Security, | **(Endangered Species Act, 16 U.S.C. §§ 1531, *et seq.*)** |
| Defendant. | |

Ecological Rights Foundation ("EcoRights") alleges as follows:

## INTRODUCTION

1.  With this action for declaratory and injunctive relief, Plaintiff challenges the failure of defendant, Federal Emergency Management Agency ("FEMA"), to ensure, in consultation with the Secretary of Commerce and the Secretary of the Interior, that the implementation of the National Flood Insurance Program ("NFIP") is not likely to jeopardize the continued existence of threatened and endangered species or destroy or adversely modify designated critical habitat for those species in Monterey County and Santa Cruz County in California. 16 U.S.C. § 1536(a)(2). Through the NFIP, FEMA facilitates, influences, and even promotes and encourages human development in Monterey County and Santa Cruz County floodplains, thereby impairing habitat functions essential to the continued survival and recovery of imperiled species listed as threatened and endangered under the Endangered Species Act ("ESA"), 16 U.S.C. §§ 1531-1544. However, FEMA has never addressed these direct and significant impacts to the federally protected species, in consultation with the National Marine Fisheries Service ("NMFS") or the United States Fish and Wildlife Service ("FWS"), as required by law, *see* 16 U.S.C. § 1536(a), to ensure that the NFIP does not jeopardize the continued existence of these species or destroy or adversely modify their critical habitat. Plaintiff also challenges FEMA's failure to use its authorities to carry out programs to conserve listed species. 16 U.S.C. § 1536(a)(1). Plaintiff's claims arise under the ESA and its implementing regulations.

2.  Plaintiff brings this action pursuant to the ESA's citizen suit provisions. 16 U.S.C. § 1540(g).

## JURISDICTION

3.  This Court has jurisdiction over the claims set forth in this Complaint pursuant to 28 U.S.C. § 1331 (civil action arising under the laws of the United States), 28 U.S.C § 2201 (declaratory relief), 28 U.S.C § 2202 (injunctive relief), and 16 U.S.C. § 1540(g)(1) (ESA citizen suit).

4.  This Court has subject matter jurisdiction over violations of the ESA by FEMA pursuant to 16 U.S.C. § 1540(g)(1), which authorizes citizens to bring suit to enjoin any person

1    that is in violation of the ESA.

2        5.   Plaintiff provided notice of intent to file suit under the ESA for activities occurring in

3    Monterey County on September 22, 2016, more than 60 days prior to filing this litigation.

4        6.   Plaintiff provided notice of intent to file suit under the ESA for activities occurring in

5    Santa Cruz County on November 21, 2016, more than 60 days prior to filing this litigation.

6        7.   This Court has personal jurisdiction over FEMA and its officials because FEMA is an

7    agency of the federal government operating within the United States. The regional office of

8    FEMA is located in the City of Oakland, Alameda County.

9        8.   Plaintiff and its members visit Monterey County and Santa Cruz County floodplains for

10   wildlife viewing, scientific observation, educational study, aesthetic enjoyment, spiritual

11   contemplation, and recreation, including kayaking, fishing, and photography.

12       9.   Plaintiff and its members are aggrieved by FEMA's lack of ESA consultation

13   concerning the numerous ongoing adverse impacts that the NFIP is causing to Listed Species and

14   their critical habitat.

15       10. FEMA's lack of ESA section 7 consultation on Listed Species has caused and will in

16   the future continue to cause an impairment of the state of the ecosystem in Monterey County and

17   Santa Cruz County, and as a result, EcoRights' and its members' use of the area is impaired and

18   diminished.

19                                    **VENUE**

20       11. Venue in the United States District for the Northern District of California is proper

21   under 28 U.S.C. § 1391(e) because a substantial part of the events or omissions giving rise to this

22   claim occurred in this district, the Plaintiff EcoRights resides in this district, and the Defendant

23   maintains an office in Oakland, California.

24                          **INTRADISTRICT ASSIGNMENT**

25       12. Intradistrict assignment of this matter to the San Francisco Division of the Court is

26   appropriate pursuant to Civil Local Rule 3-2(d) because EcoRights' principal counsel resides in

27   San Francisco County, EcoRights' principal place of business is located in Garberville,

28   California and the office of the Deputy U.S. Attorney who will likely serve as at least one of

1   FEMA's counsel in this matter is located in the Federal Building in San Francisco County.

2                              **THE PARTIES**

3      13. Ecological Rights Foundation is a non-profit, public benefit corporation, organized

4   under the laws of the State of California, devoted to furthering the rights of all people to a clean,

5   healthful and biologically diverse environment. To further its environmental advocacy goals,

6   EcoRights actively seeks federal and state agency implementation of state and federal wildlife

7   related laws, and as necessary, directly initiates enforcement actions on behalf of itself and its

8   members.

9      14. Defendant, FEMA, an agency of the Department of Homeland Security, is the agency

10  of the United States Government responsible for administering and implementing the National

11  Flood Insurance Program. Region IX of FEMA, which oversees the implementation of the NFIP

12  in California, is headquartered in Oakland, California.

13                         **STATUTORY BACKGROUND**

14  **The Endangered Species Act**

15     15. The ESA is "the most comprehensive legislation for the preservation of endangered

16  species ever enacted by any nation." *Tennessee Valley Authority v. Hill*, 437 U.S. 153, 180

17  (1978). To accomplish this purpose, the ESA includes both substantive and procedural

18  provisions that are designed to protect and recover imperiled species. To meet these obligations,

19  "endangered species [have] priority over the 'primary missions' of federal agencies." *Id*. at 185.

20     16. ESA section 7 establishes an interagency consultation process to assist federal agencies

21  in complying with their duty to ensure against jeopardy to listed species or destruction or adverse

22  modification of critical habitat. An agency must initiate consultation under section 7 with either

23  NMFS (in the case of marine or anadromous species) or the FWS (for all other species)

24  whenever it takes an action that "may affect" a listed species. 50 C.F.R. § 402.14(a). Regulations

25  implementing section 7 broadly define the scope of "agency actions" subject to consultation. *See*

26  50 C.F.R. § 402.02 (defining "agency action"). "Agency actions" are construed broadly. *E.g.*,

27  *Pacific Rivers Council v. Thomas*, 30 F.3d 1050, 1054–55 (9th Cir. 1985); *see also Nat'l Wildlife*

28  *Fed'n v. Fed. Emergency Mgmt. Agency*, 345 F. Supp. 2d 1151 (W.D. Wash. 2004) (holding

various components of NFIP are discretionary agency actions requiring section 7 consultation). The consultation process concludes when the expert agency issues a biological opinion on the impacts of the agency action to listed species. In a July 12, 2012 letter to FEMA regarding its intent to prepare an Environmental Impact Statement for the NFIP, NMFS reiterated the point that ESA 7 consultation via FEMA is required when a NFIP map change "may affect, either directly or indirectly, ESA listed species or critical habitat." Furthermore, it admonished that FEMA's guidance on the matter is "problematic as it incorrectly directs non-federal entities to consult with the federal services directly," resulting in difficulties for NMFS and FEMA, and delays for requestors. NMFS further admonished that FEMA's guidance should be changed to reflect the interagency consultation requirements of the ESA.[1]

17. Separately, ESA section 7(a)(1) obligates federal agencies to "utilize their authorities in furtherance of the purposes of this chapter by carrying out programs for the conservation of endangered species and threatened species listed" under the Act. 16 U.S.C. § 1536(a)(1). Like the duty to avoid jeopardy, the conservation duty is discharged in consultation with FWS or NMFS. *Id*.

18. ESA section 7(a)(2) further imposes a substantive duty on federal agencies to ensure that any action authorized, funded, or carried out by such agency (*i.e.*, "agency action") is not likely to jeopardize the continued existence of any endangered species or threatened species or result in the destruction or adverse modification of habitat of such species. 16 U.S.C. § 1536(a)(2).

**The National Flood Insurance Program**

19. Congress first established the NFIP with the passage of the National Flood Insurance Act of 1968. 42 U.S.C. §§ 4012–4129. The NFIP was subsequently broadened and modified with the passage of the Flood Disaster Protection Act of 1973, and amended again in 1994 with the

---

[1] Similarly, in a December 14, 2015 electronic mail communication, NMFS staff agreed that issuance of a FEMA NFIP determination known as "a CLOMR-F" (which is explained in paragraph 18 below) "is a federal action and FEMA must consult with us [under ESA section 7] on that action."

1  National Flood Insurance Reform Act.

2      20. The NFIP is a federal program administered and implemented by FEMA that enables

3  private property owners to purchase federal flood insurance. The NFIP is designed to provide an

4  insurance alternative to disaster assistance to meet the escalating costs of repairing damage to

5  buildings and their contents caused by floods, as private flood insurance was generally

6  unavailable from the private-sector insurance companies for property located in flood prone

7  areas. 44 C.F.R. § 59.2(a). Under the NFIP, local communities become eligible for federal flood

8  insurance once they have adopted "adequate land use and control measures" consistent with

9  criteria developed by FEMA. 42 U.S.C. § 4012(c)(2); 44 C.F.R. § 59.22 (prerequisites for the

10  sale of flood insurance). FEMA develops, and from time to time is required to revise,

11  "comprehensive criteria" designed to encourage the adoption of land use measures that reduce

12  the amount of development exposed to floods, assist in reducing damage caused by floods, and

13  "otherwise improve the long range land management and use of flood-prone areas." 42 U.S.C. §

14  4102(c). FEMA's minimum criteria for local floodplain management are encoded in federal

15  regulations at 44 C.F.R. § 60.3. Although the statute authorizes FEMA to adopt regulations for

16  the general protection of the floodplain, the existing regulations are primarily designed to

17  minimize damage to structures and water systems during flood events, and eliminate the

18  possibility that structures will exacerbate floods by increasing flood levels. *Id*.; FEMA, National

19  Flood Insurance Program: Program Description at 2 (Aug. 1, 2002) ("Program Description")

20  ("The emphasis on floodplain management requirements is directed toward reducing threats to

21  lives and the potential for damages to property in flood-prone areas."). The criteria are not

22  designed or intended to protect aquatic habitat, imperiled species, or other environmental values.

23      21. FEMA oversees communities' participation in and eligibility for the NFIP in an

24  ongoing manner. "FEMA monitors communities to ensure that they have adopted an ordinance

25  that meets or exceeds the minimum NFIP floodplain management criteria and to ensure that they

26  are effectively enforcing their ordinance." Program Description at 12. FEMA conducts

27  community visits and contacts to ensure proper implementation of NFIP requirements. *Id*. A

28  community's failure to implement and enforce NFIP minimums can result in probation or

1  suspension from the program, which would make federal flood insurance unavailable in that

2  community. 44 C.F.R. § 59.24. To monitor compliance, FEMA conducts community visits to

3  perform comprehensive assessments of local programs and provide technical assistance to local

4  officials. These community visits enable FEMA to ensure compliance with land-use regulations

5  to the minimum criteria standard. *Id*.  Moreover, FEMA implements a Community Rating

6  System (CRS), a separate, voluntary program to encourage local floodplain management

7  regulation that exceeds the regulatory minimums. Under the CRS, floodplain management

8  regulation above NFIP minimums is rewarded with lower insurance rates for insureds. *See* 55

9  Fed. Reg. 28,291 (July 10, 1990); Program Description at 22 (noting that one goal of CRS is to

10  "protect natural and beneficial floodplain functions").

11       22. FEMA further implements the NFIP through development and revision of maps and

12  other information that identify flood-prone areas. 42 U.S.C. § 4101. These maps, known as Flood

13  Insurance Rate Maps (FIRMs), identify various categories of flood hazard areas in which land

14  use and building criteria are to apply. *See* 44 C.F.R. § 64.3 (identifying different zones on

15  FIRMs). The maps are required to be reviewed at least once every five years to assess the need to

16  update the maps to accommodate new information. 42 U.S.C. § 4101(e). Individuals can request

17  and obtain from FEMA a Letter of Map Change (LOMC) if they can show an inaccuracy or

18  change in the map that affects the status of their property, which are "documents issued by

19  FEMA that revise or amend the flood hazard information shown on the FIRM without requiring

20  the FIRM to be physically revised and re-published." FEMA Website,

21  https://www.fema.gov/letter-map-changes.

22       23. FEMA can issue a range of different types of LOMCs, including, but not limited to, a

23  Conditional Letter of Map Revision ("CLOMR"), a Conditional Letter of Map Revision Based

24  on Fill ("CLOMR-F"), a Letter of Map Revision ("LOMR"), a Letter of Map Revision Based on

25  Fill ("LOMR-F"), a Letter of Map Amendment ("LOMA"), and a Conditional Letter of Map

26  Amendment ("CLOMA"). A LOMA is an official amendment, by letter, to an effective NFIP

27  map. A LOMA establishes a property's location in relation to the Special Flood Hazard Area

28  ("SFHA"). LOMAs are usually issued because a property has been inadvertently mapped as

1  being in the floodplain, but is actually on natural high ground above the base flood elevation.

2  FEMA Website, http://www.fema.gov/letter-map-amendment-loma.

3      24. A CLOMA "is FEMA's comment on a proposed structure or group of structures that

4  would, upon construction, be located on existing natural ground above the base (1-percent-

5  annual-chance) flood elevation on a portion of a legally defined parcel of land that is partially

6  inundated by the base flood." 44 C.F.R. §72.2.

7      25. A LOMR is FEMA's modification to an effective FIRM or Flood Boundary and

8  Floodway Map ("FBFM") or both. LOMRs are generally based on the implementation of

9  physical measures that affect the hydrologic or hydraulic characteristics of a flooding source and

10  thus result in the modification of the existing regulatory floodway, the effective base flood

11  elevations, or the SFHA. The LOMR officially revises the FIRM or FBFM, and sometimes the

12  Flood Insurance Study ("FIS") report, and, when appropriate, includes a description of the

13  modifications. The LOMR is generally accompanied by an annotated copy of the affected

14  portions of the FIRM, FBFM, or FIS report. *Id*.

15      26. The "regulatory floodway" is the channel of a river or other watercourse and the

16  adjacent land areas that must be reserved in order to discharge the base flood without

17  cumulatively increasing the water surface elevation more than a designated height. 44 C.F.R §

18  59.1. Development in floodways is generally forbidden.

19      27. A LOMR-F "is FEMA's modification of the SFHA shown on the FIRM based on the

20  placement of fill outside the existing regulatory floodway." 44 C.F.R. § 72.2.

21      28. A CLOMR "is FEMA's comment on a proposed project that would, upon construction,

22  affect the hydrologic or hydraulic characteristics of a flooding source and thus result in the

23  modification of the existing regulatory floodway, the effective base flood elevations, or the

24  SFHA." *Id*.

25      29. A CLOMR-F "is FEMA's comment on a proposed project that would, upon

26  construction, result in a modification of the SFHA through the placement of fill outside the

27  existing regulatory floodway." *Id*.

28

30. Participation by a community in the NFIP is, technically, voluntary. However, as a practical matter, failure to enroll in the NFIP can significantly affect current and future property owners in the community's floodplains and the availability of federal financial assistance in the flood-prone areas of the community. For example, if a community chooses not to participate in the NFIP, various types of federal assistance, such as mortgages from a federally insured or regulated bank and Veterans Administration loans, are prohibited if the building used to secure the assistance is in the 100-year floodplain. 42 U.S.C. § 4012a.

31. The National Flood Insurance Act also prohibits other federal agencies such as the Federal Housing Administration and the Small Business Administration from making or guaranteeing a loan secured by a building in a floodplain unless the flood insurance has been purchased. *Id*. Federal flood insurance cannot be purchased for buildings in non-participating communities. *Id*. §§ 4202, 4106.

32. As a result of the NFIP and its requirements described herein, virtually all communities in the United States that have floodplains within their boundaries have elected to participate in the NFIP.

33. In addition, FEMA administers the Public Assistance Program, Individual and Households Program, and Hazard Mitigation Grant Program (collectively "Disaster Preparedness, Mitigation, and Recovery Programs")[2], which are interrelated in purpose and effect to the National Flood Insurance Program. These programs are administered pursuant to the Robert T. Stafford Disaster Relief and Emergency Assistance Act of 1988 (42 U.S.C. §§ 5121-5206 ("Stafford Act"). Under the Stafford Act, FEMA may provide funds to repair, restore, or replace disaster-damaged public facilities and facilities owned by certain private nonprofit organizations. Eligible facilities include roads and associated features, such as lighting, curbs, and sidewalks; bridges, culverts, and associated features, such as abutments, headwalls, and erosion protection, water control facilities, such as embankments, retention basins, and canals; buildings and equipment; utilities, such as water and sewer lines and electrical distribution

---

[2] For brevity, hereinafter the term "NFIP" includes FEMA's Disaster Preparedness, Mitigation, and Recovery Programs.

1  facilities; mass transit facilities; and parks and recreational facilities. Often, the entity applying

2  for assistance takes advantage of the opportunity presented by the need to repair a disaster

3  damaged facility to make improvements to, or change the design of, the facility. FEMA also

4  provides funding under these programs for the expansion or construction of other selected

5  facilities, the purchase of capital equipment, or the funding of hazard mitigation measures. The

6  Stafford Act and other legislation authorize FEMA to provide hazard mitigation assistance by

7  providing funding for activities that reduce or eliminate public safety and property damage risks

8  from future events or disasters. FEMA may provide funds for mitigation activities applied to a

9  specific facility—such as elevating a floodprone building above flood elevation—or reducing

10 risks to a community through measures such as vegetation management to reduce the risk of loss

11 or damage associated with wildfire events. FEMA may also provide funds for the relocation or

12 acquisition of facilities located in areas of hazard, such as floodplains, where repetitive damage

13 is likely to occur.

14   34. Courts have consistently held that NFIP implementation is an agency action that

15 requires section 7 consultation where it may affect listed species. *Nat'l Wildlife Fed'n v. Fed.*

16 *Emergency Mgmt. Agency* ("*NWF*"), 345 F. Supp. 2d 1151, 1174 (W.D. Wash. 2004) ("FEMA's

17 implementation of the NFIP . . . is a discretionary "agency action" for the purposes of Section

18 7(a)(2) of the ESA"); *Florida Key Deer v. Paulison*, 522 F. 3d 1133 (11th Cir. 2008) (affirming

19 that FEMA and the FWS failed to comply with section 7 of the ESA, with regard to FEMA's

20 administration of NFIP in the Florida Keys); *Coalition for a Sustainable Delta v. FEMA*, 812 F.

21 Supp. 2d 1089, 1121-24;1125-26 (E.D. Cal. 2011) (FEMA's ability to shape the floodplain

22 through map revision approvals evidenced FEMA's ongoing implementation discretion, thus

23 constituting affirmative agency action under the ESA).

24   35. Specific NFIP activities that require ESA section 7 consultation include (note:

25 hereinafter, references to "the NFIP" include, *inter alia*, all of the below FEMA activities):

26   • FIRM Changes. *Delta*, *supra*, 812 F. Supp. 2d at 1123, 1132. ("although FEMA's

27     individual mapping actions are taken in response to the actions of third parties,

28     each such mapping action is an 'affirmative action' that collectively has the

potential to encourage third parties to fill and/or build levees in the Delta
floodplain.")

- Minimum Eligibility Criteria. *NWF*, *supra*, 345 F. Supp. 2d at 1174 ("FEMA
  must consult on its minimum eligibility criteria because FEMA has discretion to
  amend its regulations and because those regulations have an ongoing impact on
  the use of floodplains.")

- Community Rating System. *Id*. ("by offering discounts to communities that adopt
  certain types of regulations, FEMA could encourage the adoption of salmon-
  friendly measures in local communities. For these reasons, formal consultation is
  required.")

- FEMA's Disaster Preparedness, Mitigation, and Recovery Programs. FEMA's
  Disaster Preparedness, Mitigation, and Recovery Programs promote the
  placement of facilities and structures in flood prone locations and replacement of
  damaged facilities and structures in their original flood prone locations. *See 2013
  South-Central California Coast Steelhead Recovery Plan at 3-6.*[3]

## FACTUAL BACKGROUND

36. One of the major issues in floodplain management and flood protection in Monterey
County and Santa Cruz County is the question of how much encroachment of human
development should be allowed into 100-year flood zones. The closer to rivers, streams and other
waters that development is sited, the higher a barrier to floodwaters will be erected, as greater
limitations on the horizontal expanse of a waterway will require a vertical increase in the water
level to maintain a similar water volume cross-section. FEMA standards require that
development encroachment cannot occur within an area that will impose a vertical increase of
more than one foot, or increase water velocity to a level that will become hazardous. 44 C.F.R.
§§ 60.3(c)(10), 64.3, 60.22. Otherwise, floodwaters will spill over into developed areas.

---

[3] 2013 SCCC Steelhead Recovery Plan, http://www.westcoast.fisheries.noaa.gov/publications/
recovery_planning/salmon_steelhead/domains/south_central_southern_california/2013_scccs_re
coveryplan_final.pdf (Dec. 2013).

a.   Accordingly, to participate in the NFIP, Monterey County has adopted ordinances that regulate construction in the 100-year flood plains to limit future flood damages. With the incentives and encouragement that the NFIP provides and that Monterey County allows in accord with NFIP requirements, extensive floodplain development has occurred, continues to occur and will occur in the future within Monterey County. This floodplain development has had, and will continue to have, adverse impacts to the Listed Species and their critical habitat.

b.   Accordingly, to participate in the NFIP, Santa Cruz County has adopted ordinances that regulate construction in the 100-year flood plains to limit future flood damages. With the incentives and encouragement that the NFIP provides and that Santa Cruz County allows in accord with NFIP requirements, extensive floodplain development has occurred, continues to occur and will occur in the future within Santa Cruz County. This floodplain development has had, and will continue to have, adverse impacts to the Listed Species and their critical habitat.

37.  Species listed as endangered or threatened under the ESA are present in Monterey County, including the tidewater goby (*Eucyclogobius newberryi*), South-Central California Coast Steelhead ("SCCC Steelhead"), western snowy plover ("WSP") (*Charadrius nivosus nivosus*, formerly C. *alexandrinus nivosus*), Yadon's piperia (*Piperia yadonii*), purple amole (*Chlorogalum purpureum var. purpureum*), the central population of the California tiger salamander ("CTS") (*Ambystoma californiense*), the California red-legged frog ("CRLF") (*Rana draytonii*), vernal pool fairy shrimp ("VPFS") (*Branchinecta lynchi*), and the Monterey spineflower (*Chorizanthe pungens var. pungens*) (collectively, "the Monterey Listed Species"). Monterey County furthermore contains critical habitat for ESA-listed species designated by NMFS or FWS. Each of these species, designated critical habitats for ESA-protected species, and areas where these species otherwise reside is listed in the FWS IPaC Trust Resources Report for Monterey County, available at http://ecos.fws.gov/ipac.

38. Species listed as endangered or threatened under the ESA are present in Santa Cruz County, including the tidewater goby (*Eucyclogobius newberryi*), Central California Coast Steelhead ("CCC Steelhead"), SCCC Steelhead, Central California Coast coho salmon ("CCC

Coho"), Marbled murrulet (*Brachyramphus marmoratus*), WSP, the Santa Cruz Long-toed salamander ("SCLTS") (*Ambystoma macrodactylum croceum*), CRLF, and the Monterey spineflower (*Chorizanthe pungens var. pungens*) (collectively, "the Santa Cruz Listed Species"). Santa Cruz County furthermore contains critical habitat for ESA-listed species designated by NMFS or FWS. Each of these species, designated critical habitats for ESA-protected species, and areas where these species otherwise reside is listed in the FWS IPaC Trust Resources Report for Santa Cruz County, available at http://ecos.fws.gov/ipac.

39. Implementation of the NFIP in Monterey County is a federal agency action that "may affect" the Monterey Listed Species. Moreover, NMFS and FWS have designated critical habitat in Monterey County for the Monterey Listed Species. Implementation of the NFIP "may affect" this designated critical habitat.

40. Implementation of the NFIP in Santa Cruz County is a federal agency action that "may affect" the Santa Cruz Listed Species. Moreover, NMFS and FWS have designated critical habitat in Santa Cruz County for the Santa Cruz Listed Species. Implementation of the NFIP "may affect" this designated critical habitat.

41. Urban development is one of the chief causes of the decline of the Monterey County Listed Species and the Santa Cruz County Listed Species, and remains a serious threat to these species' recovery.

42. Congress enacted the NFIP, in part, in response to the unavailability of private insurance for floodplain development. 42 U.S.C. § 4002(a)(2) ("The availability of Federal loans, grants, guarantees, insurance and other forms of financial assistance are often determining factors in the utilization of land and the location and construction of public and of private industrial, commercial, and residential facilities."). Since loans and other financing for construction in floodplain areas is generally unavailable without flood insurance, FEMA's provision of flood insurance is a major factor in development proceeds in floodplains. FEMA's implementation of the NFIP has the result of encouraging development in flood-prone areas, which include critical habitat for the Listed Species and are critically important to the protection and recovery of the Listed Species.

43. Floodplain development has adversely modified and will continue to adversely modify the Listed Species' critical habitat in Monterey County and will continue to jeopardize the Monterey Listed Species' survival and recovery. *See NWF*, 345 F. Supp. 2d at 1176 (noting "development is 'reasonably certain to occur' as a result of [NFIP implementation]"); *see also Florida Key Deer*, 522 F.3d at 1144 ("FEMA has the authority in its administration of the NFIP to prevent the indirect effects of its issuance of flood insurance by, for example, tailoring the eligibility criteria that it develops to prevent jeopardy to listed species. Therefore, its administration of the NFIP is a relevant cause of jeopardy to listed species.").

44. Floodplain development has adversely modified and will continue to adversely modify the Listed Species' critical habitat in Santa Cruz County and will continue to jeopardize the Santa Cruz Listed Species' survival and recovery. *See id*.

45. Monterey County has adopted floodplain regulations in order to continue participation in the federal flood insurance program, as detailed further below. Flood zones within Monterey County containing designated critical habitat for threatened and/or endangered species or where threatened and/or endangered species otherwise reside include, but may not be limited to, tidelands, tidal waters, river/stream courses, wetlands, and/or flood plains within or adjacent to the following waters:

     a.    Pajaro River

     b.    Elkhorn/Bennet Sloughs/Moss Landing

     c.    Old Salinas River

     d.    Tembladero Slough

     e.    Gabilan Creek

     f.    Salinas River

     g.    Nacimiento River

     h.    San Antonio River

     i.    Arroyo Seco

     j.    Reliz Creek

     k.    Paloma Creek

| | | |
|---|---|---|
| 1 | l. | Piney Creek |
| 2 | m. | Horse Creek |
| 3 | n. | Lhano Grande Canyon |
| 4 | o. | Lewis Creek |
| 5 | p. | San Lorenzo Creek |
| 6 | q. | Salinas River |
| 7 | r. | Seal Rock Creek |
| 8 | s. | Carmel River |
| 9 | t. | Potrero Creek |
| 10 | u. | Robertson Canyon Creek |
| 11 | v. | Las Garzas Creek |
| 12 | w. | Hitchcock Canyon Creek |
| 13 | x. | Tularcitos Creek |
| 14 | y. | Rana Creek |
| 15 | z. | Aqua Mojo Creek |
| 16 | aa. | San Clemente Creek |
| 17 | bb. | Pine Creek |
| 18 | cc. | Cachagua Creek |
| 19 | dd. | Borondo Creek |
| 20 | ee. | James Creek |
| 21 | ff. | Big Creek |
| 22 | gg. | Pinch Creek |
| 23 | hh. | Robertson Creek |
| 24 | ii. | San Carpoforo Creek |
| 25 | jj. | Dutra Creek |
| 26 | kk. | Big Sur River |
| 27 | ll. | Little Sur River |
| 28 | mm. | Bixby Creek |

1
      nn.   Malpaso Creek

2
      oo.   San Jose Creek

3      46. Additional locations within Monterey County containing designated critical habitat for

4 threatened and/or endangered species or where threatened and/or endangered species otherwise

5 reside include Monterey County coastal beach areas (Pajaro River Mouth to Monterey, Pfeiffer

6 Beach to Andrew Molera State Park) and the Pacific Ocean and adjoining shorelines.

7      47. EcoRights has performed an analysis of the extent of overlaps between the one hundred

8 year floodplain, or SFHA, and designated critical habitat for Monterey Listed Species in

9 Monterey County. This analysis determined that extensive overlaps exist between designated

10 critical habitat and the FEMA-designated SFHA in Monterey County, involving at least the nine

11 Monterey Listed Species. EcoRights' analysis is summarized in the chart attached hereto as

12 Attachment 19 and incorporated here by reference.

13      48. Both the areas described in Attachment 19 and list of waters/areas in paragraphs 45 and

14 46 are nonexclusive lists. FEMA has in its possession maps and information concerning the

15 exact location of all flood hazards it has considered and mapped within Monterey County. As

16 detailed further below, FEMA has a duty to initiate ESA section 7 consultation as to the effect of

17 its implementation of the NFIP in Monterey County on the listed species and critical habitat

18 described by the FWS IPaC Report in the areas identified in paragraphs 37, 45 and 46 and in any

19 other areas where FEMA has information identifying such areas as locations both inhabited by

20 ESA-listed species and as being flood-prone areas affected by FEMA's NFIP administration.

21      49. Santa Cruz County has adopted floodplain regulations in order to continue participation

22 in the federal flood insurance program, as detailed further below. Flood zones within Santa Cruz

23 County containing designated critical habitat for threatened and/or endangered species or where

24 threatened and/or endangered species otherwise reside include, but may not be limited to,

25 tidelands, tidal waters, river/stream courses, wetlands, and/or flood plains within or adjacent to

26 the following waters:

27
      a.   Aptos Creek

28
      b.   Arana Gulch Creek

1      c.   Baldwin Creek

2      d.   Bean Creek

3      e.   Bear Creek

4      f.   Boulder Creek

5      g.   Branciforte Creek

6      h.   Browns Creek

7      i.   Carbonera Creek

8      j.   Casserly Creek

9      k.   Central Branch Arana Gulch Creek

10     l.   Corcoran Lagoon

11     m.   Corralitos Lagoon

12     n.   Corralitos Creek

13     o.   Green Valley Creek

14     p.   Hare Creek

15     q.   Kings Creek

16     r.   Laguna Creek

17     s.   Lompico Creek

18     t.   Majors Creek

19     u.   Mill Creek

20     v.   Molino Creek

21     w.   Newell Creek

22     x.   Pajaro River

23     y.   Peasley Gulch

24     z.   Salsipuedes Creek

25     aa.   San Lorenzo River

26     bb.   San Vicente Creek

27     cc.   Scott Creek

28     dd.   Seascape Pond

1    ee.   Soquel Creek

2    ff.   Two Bar Creek

3    gg.   Valencia Creek

4    hh.   Valencia Lagoon

5    ii.   Waddell Creek

6    jj.   Watsonville Slough (including all or portions of Gallighan, Hanson, Harkins,

7          Watsonville, Struve, and the West Branch of Struve sloughs)

8    kk.   West Branch Soquel Creek

9    ll.   Wilder Creek

10   mm. Zayante Creek

11       50. Additional locations within Santa Cruz County containing designated critical habitat for

12   threatened and/or endangered species or where threatened and/or endangered species otherwise

13   reside include Santa Cruz County coastal beach areas (including but not limited to Waddell

14   Creek Beach, Scott Creek Beach, Wilder Creek Beach, and Jetty Road to Aptos and beaches near

15   the Pajaro River Mouth west of Watsonville) and the Pacific Ocean and adjoining shorelines.

16       51. EcoRights has performed an analysis of the extent of overlaps between the one hundred

17   year floodplain, or SFHA, and designated critical habitat for Monterey Listed Species in

18   Monterey County. This analysis determined that extensive overlaps exist between designated

19   critical habitat and the FEMA-designated SFHA in Monterey County, involving at least the

20   Santa Cruz Listed Species identified herein. EcoRights' analysis is summarized in the chart

21   attached hereto as Attachment 20, and incorporated here by reference, as well as in paragraphs

22   61, 67, 78, 86, 95, 100, 114, 117, 126.

23       52. Both the areas described in paragraph 51 and Attachment 20 and list of waters/areas in

24   paragraph 49 and 50 are nonexclusive lists. FEMA has in its possession maps and information

25   concerning the exact location of all flood hazards it has considered and mapped within Santa

26   Cruz County. As detailed further below, FEMA has a duty to initiate ESA section 7 consultation

27   as to the effect of its implementation of the NFIP in Santa Cruz County on the listed species and

28   critical habitat described by the FWS IPaC Report in the areas identified in paragraph 38 and in

1   any other areas where FEMA has information identifying such areas as locations both inhabited

2   by ESA-listed species and as being flood-prone areas affected by FEMA's NFIP administration.

3   **NFIP Adverse Impacts On Tidewater Goby**

4       53. The tidewater goby (*Eucyclogobius newberryi*) is a small fish that inhabits coastal

5   brackish waters and requires for its survival and recovery properly functioning habitat, which

6   includes healthy stream channels and adjoining wetlands, flood plains, and estuaries, some of

7   which lie within Special Flood Hazard Areas of Monterey County and Santa Cruz County.

8       54. The tidewater goby is listed as endangered. As FWS has found in its critical habitat

9   determinations, "[c]oastal development projects that result in the loss or alteration of coastal

10  wetland habitat," "alterations of water flows upstream of coastal lagoons and estuaries that

11  negatively impact the species' breeding and foraging activities," and "channelization of the

12  rivers where the species occurs" are some of the key threats to the species. 78 Fed. Reg. 8745,

13  8750 (Feb. 6, 2013). As the Tidewater Goby Recovery Plan states, "Coastal development

14  projects that modify or destroy coastal brackish-water habitat are the major factor adversely

15  affecting the tidewater goby." Tidewater Goby Recovery Plan at 16 [available at:

16  https://ecos.fws.gov/docs/recovery_plan/051207.pdf (Dec. 7, 2006)]. Construction of manmade

17  barriers along the coast destroys the tidewater goby's sandbar habitat. Proposed Rules for

18  Reclassifying Tidewater Goby, 79 Fed. Reg. 14153, 14344 (March 13, 2014). The formation of

19  sandbars at the mouth of lagoons in Monterey County and Santa Cruz County occurs in the late

20  spring as freshwater flows into the lagoon decline and allow the ocean to build up the sandbar

21  through wave action on the beach. *Id*. at 14344. Artificial breaching of sandbars reverses this

22  freshening process and leads to stratified salinity conditions and warm, oxygen-poor bottom

23  conditions that are unsuitable for the tidewater goby. *Id*. Tidewater gobies also depend upon

24  calm backwaters as refuges against storm flows and/or draining of small lagoons when the

25  sandbar is opened in winter. *Id*.

26      55. The tidewater goby also requires lagoons with adequate sediment for burrow

27  construction and spawning. *Id*. Manmade barriers along the coast may decrease the amount of

28

1   sediment that is carried over to lagoons and thus available for burrow construction and spawning.

2   *Id*.

3      56. Manmade barriers also prevent migration of the tidewater goby to new colonies and

4   habitats. *Id*. High freshwater flows into lagoons and estuaries typically carry tidewater gobies

5   into the ocean and allow them to move up or down the coast with longshore currents and into

6   adjacent lagoons. *Id*. at 14345. Artificial barriers interfere with this process and prevent the

7   species from reproducing, colonizing, and thriving. *Id*. Furthermore, isolation caused by

8   manmade barriers harms the tidewater goby by preventing migration between populations,

9   leading to low levels of genetic diversity that make populations vulnerable to extinction. *Id*.

10      57. FEMA's NFIP has incentivized and facilitated and continues to incentivize and

11   facilitate development that directly and indirectly creates manmade barriers to the movement of

12   tidewater gobies into areas of their traditional habitat and/or interferes with the natural

13   movement of sand in a fashion that has adversely impacted the natural building and breaching of

14   sandbar barriers at the mouths of Monterey County rivers inhabited by tidewater goby, including

15   the placement of fill, the construction of buildings, roads, driveways, culverts, revetments, and

16   structures to armor coastal shorefronts and river and stream banks such as retaining walls and

17   seawalls.

18      58. FEMA's NFIP has incentivized and facilitated and continues to incentivize and

19   facilitate development that directly and indirectly creates manmade barriers to the movement of

20   tidewater gobies into areas of their traditional habitat and/or interferes with the natural

21   movement of sand in a fashion that has adversely impacted the natural building and breaching of

22   sandbar barriers at the mouths of Santa Cruz County rivers inhabited by tidewater goby,

23   including the placement of fill, the construction of buildings, roads, driveways, culverts,

24   revetments, and structures to armor coastal shorefronts and river and stream banks such as

25   retaining walls and seawalls.

26      59. Degradation of water quality resulting from development also negatively impacts the

27   tidewater goby's various aquatic habitats. *Id*. Many drainages to coastal lagoons are

28   contaminated with polluted storm water runoff (chemicals and soil) from developed areas.

1    Tidewater Goby Recovery Plan at 21. Floodplain development incentivized and facilitated by the

2    NFIP is increasing the volume and contamination levels of storm water runoff into tidewater

3    goby habitat.

4        60. Monterey County contains three designated critical habitat areas for listed tidewater

5    goby that are being degraded by floodplain development encouraged by FEMA's NFIP: the

6    Pajaro River, Bennett Slough, and the Salinas River. A large extent of this designated critical

7    habitat is within the SFHA, as summarized in Attachment 19. A visual example of one of the

8    clear overlaps of tidewater goby designated critical habitat and the SFHA is provided through a

9    comparison of a map from the Federal Register notice designating tidewater goby critical habitat

10   with the effective FIRM panel for the mouth of the Salinas River (*See* Attachments 1-2).

11       61. Santa Cruz County contains eight designated critical habitat areas for listed tidewater

12   goby that are being degraded by floodplain development encouraged by FEMA's NFIP, Waddell

13   Creek, Scott Creek, Laguna Creek, Baldwin Creek, Moore Creek, Corcoran Lagoon, Aptos

14   Creek, and the Pajaro River. 78 Fed. Reg. 8746, 8759 (Feb. 6, 2013). Designated tidewater goby

15   critical habitat is located in Santa Cruz County within the SFHA on the following FIRM panels:

16   06087C0160E, 06087C0190E, 06087C0310E, 06087C0333E, 06087C0353E, 06087C0356E,

17   06087C0357E, and 06087C0456E.

18   **NFIP Adverse Impacts On South-Central California Coast Steelhead**

19       62. The SCCC Steelhead is a Distinct Population Segment that includes "all naturally

20   spawned populations of steelhead in streams from the Pajaro River (inclusive) to, but not

21   including the Santa Maria River, California." 71 Fed. Reg. 848.

22       63. The SCCC Steelhead is listed as threatened, and requires for its survival and recovery

23   properly functioning habitat, which includes healthy functioning riparian ecosystems including

24   the 100-year floodplain of rivers, streams and tidal waters in Monterey County.

25       64. The SCCC Steelhead is listed as threatened, and requires for its survival and recovery

26   properly functioning habitat, which includes healthy functioning riparian ecosystems including

27   the 100-year floodplain of rivers, streams and tidal waters in Santa Cruz County.

28

1  65. As NMFS found in its decision listing SCCC Steelhead as a threatened species,

2  urbanization is one of the key factors causing declines of steelhead, due to the resulting "loss,

3  degradation, simplification, and fragmentation of habitat." 71 Fed. Reg. 856. NMFS has made

4  similar findings in its critical habitat determinations that urbanization is one of the "activities that

5  threaten the physical and biological features essential to listed salmon and steelhead." 70 Fed.

6  Reg. 52522. As NMFS has further indicated, "the quality of aquatic habitat [for SCCC

7  Steelhead] within stream channels is intrinsically related to the adjacent riparian zones and

8  floodplain . . . . Human activities that occur outside the stream can modify or destroy physical

9  and biological features of the stream." *Id*. Habitat modifications promoted by FEMA's NFIP

10  may affect steelhead critical habitat and require ESA section 7 consultation for this reason. *See*,

11  *e.g.*, 70 Fed. Reg. at 52532.

12  66. SCCC Steelhead designated critical habitat includes most rivers and streams in

13  Monterey County, including the entire extent of the Pajaro and Salinas rivers in Monterey

14  County, and most of the Carmel River. A large extent of this designated critical habitat is within

15  the SFHA, as summarized in Attachment 19. A visual example of one of the clear overlaps of

16  SCCC Steelhead designated critical habitat and the SFHA is provided through a comparison of a

17  map of critical habitat in the Carmel Valley basin from the NMFS Federal Register notice

18  designating SCCC Steelhead critical habitat with the effective FEMA FIRM panel for confluence

19  of the lowest section of the Carmel River with the Pacific Ocean. (*See* Attachments 3-4).

20  67. SCCC Steelhead designated critical habitat includes the entire extent of the Pajaro

21  River and tributaries to the Pajaro River in Santa Cruz County. 70 Fed. Reg. at 52573-75. This

22  designated critical habitat is within the SFHA. Designated SCCC Steelhead critical habitat is

23  located in Santa Cruz County within the SFHA on the following FIRM panels: 06087C0275E,

24  06087C0381E, 06087C0383E, 06087C0384E, 06087C0392E, 06087C0393E, 06087C0394E,

25  06087C0403E, 06087C0411E, 06087C0412E, 06087C0416E, 06087C0417E, 06087C0418E,

26  06087C0419E, 06087C0440E, and 06087C0456E.

27  68. Much of the designated SCCC Steelhead habitat in Monterey County and Santa Cruz

28  County is being degraded by floodplain development encouraged by FEMA's NFIP. For

example, as detailed in the SCCC Steelhead Recovery Plan, in the Carmel River valley, "Watershed developments have increased erosion and fine sedimentation, particularly in the lower mainstem of the Carmel River, but also within some tributaries, and have contributed to habitat degradation of spawning and rearing habitats." SCCC Steelhead Recovery Plan at 10-10.

69. As further detailed by the SCCC Steelhead Recovery Plan, the NFIP has clear negative impacts on SCCC Steelhead:

> […][T]he National Flood Insurance Program regulations allow for development in the margins of active waterways if they are protected against 100-year flood events, and do not raise the water elevations within the active channel (floodway) more than one foot during such flood events. This standard does not adequately reflect the dynamic, mobile nature of watercourses in SCCC Steelhead Recovery Planning Area, and the critical role that margins of active waterways (riparian areas) play in the maintenance of aquatic habitats. In addition, FEMA programs for repairing flood related damages (Public Assistance Program, Individual and Households Program, and Hazard Mitigation Grant Program) promote the replacement of damaged facilities and structures in their original locations, which are prone to repeated damage from future flooding, and thus lead to repeated disturbance of riparian and aquatic habitats important to migrating, spawning, or rearing steelhead. 2013 SCCC Steelhead Recovery Plan at 3-6.[4]

70. The 2016 5-year review by NMFS of the SCCC Steelhead DPS reaffirms that these findings remain accurate.[5] 2016 5-Year Review of SCCC Steelhead at 38.

71. High-quality SCCC Steelhead freshwater stream habitat is characterized by well-developed riparian vegetation creating canopy that provides extensive shading of stream courses. This is important for maintaining the low water temperatures that SCCC Steelhead need. Well-developed mature riparian vegetation, including adjacent wetlands vegetation, also helps anchor streambanks and reduce streamflow velocity by decreasing the rapidity of storm water runoff into stream channels. This helps prevent erosion during high flow events. High erosion rates can promote the deposition of silt in streams that inhibit successful SCCC Steelhead spawning.

72. Adjacent wetlands vegetation in riparian corridors also serves as an important source of a healthy benthic macroinvertebrate community—the food source for SCCC Steelhead. Well-

---

[4]SCCC Steelhead Recovery Plan, http://www.westcoast.fisheries.noaa.gov/publications/recovery_planning/salmon_steelhead/domains/south_central_southern_california/2013_scccs_recoveryplan_final.pdf  (Dec. 2013).
[5]5-Year Review of SCCC Steelhead DPS, www.westcoast.fisheries.noaa.gov/publications/status_reviews /salmon_steelhead/2016/2016_sccc-steelhead.pdf (2016).

developed mature riparian vegetation also provides the source of large wood pieces that fall into stream courses and become lodged in streams, which tend to create deeper pools where reservoirs of cool water can be found and which provide other benefits as discussed below.

73. High-quality SCCC Steelhead freshwater stream habitat is further characterized by good channel heterogeneity, including densely-spaced hydraulic units (*i.e.*, pool and riffle sequences) and planform (*i.e.*, the stream's longitudinal configuration). Channels tend to be sinuous, *i.e.*, meandering in such streams. This sinuosity, combined with the presence of boulders and other obstructions in the streams (such as fallen large wood pieces as mentioned above) creates significant velocity refugia, *i.e.*, areas of shelter within the stream course from higher flow velocities. Such refugia are beneficial for steelhead for several reasons: they provide areas to rest and escape very high velocity flows in storm events, areas to spawn and not have redds (nests where eggs are deposited and incubated) scoured by high flows, and areas to feed. Channel meander tends to create point bars, which are the inside portions of the streambed's curves. These point bars push faster flowing water to the other side of the creek which in turn tends to create undercut banks on these opposite streambanks. Undercut banks, *i.e.*, areas where the toe of the bank is side-cut deeper than the overhanging bank, are areas where steelhead can hide from predators and escape high velocity flows.

74. Well-developed pool and riffle complexes are further beneficial. The existence of riffles ensures good oxygenation of waters and meeting of steelhead demands for sufficient dissolved oxygen water column values. Pools adjacent to riffle tails are advantageous steelhead feeding areas. Such streams further have substrate that is high in cobbles and gravels necessary for successful SCCC Steelhead spawning. Natural stream courses in good undisturbed condition typically also are characterized by backwater or side channel areas adjoining low flow channels (*i.e.*, the thalweg, the continuous, lowest elevation channel feature confining low flows to a well bordered, small area) into which higher flows will spill and spread. Such backwater and side channel areas in good natural condition will have lower flows than the main channel and conditions conducive for SCCC refuge and feeding, and perhaps even spawning.

75. FEMA's NFIP has incentivized and continues to incentivize various sorts of

1   development that are adversely modifying these characteristics in numerous miles of SCCC

2   Steelhead freshwater habitat throughout Monterey County and in portions of Santa Cruz County

3   along the Pajaro River and tributaries.

4         a.   The NFIP has incentivized development projects that have included the

5   placing of fill material in backwater and side channel areas adjoining SCCC steelhead streams,

6   including riprap and other streambank armoring to protect buildings from erosion related

7   damage, as well as the construction of various other structures such as roads, driveways, culverts,

8   pilings that have adversely affected backwater and side channel areas.

9         b.   The NFIP has further incentivized development projects that have facilitated

10   channelization of steelhead streams, reducing beneficial channel heterogeneity and creating more

11   homogeneous channels that are less conducive to steelhead spawning, rearing, and survival.

12         c.   The NFIP has further incentivized development projects that have caused the

13   loss of riparian vegetation, including adjacent wetland vegetation and the benefits associated

14   with such riparian vegetation discussed above.

15         d.   The NFIP has further incentivized development projects that have increased

16   the velocity of runoff into SCCC Steelhead streams and the levels of pollutants in such storm

17   water runoff by bringing hardscaping to areas close to such streams in a fashion that has

18   significantly increased the runoff coefficient from land adjoining the streams and development

19   that is a source of pollutant loading in storm water runoff. This increased storm water runoff has

20   increased stream velocity in a manner that has promoted erosion and siltation in steelhead

21   streams. Such erosion and siltation has tended to smother steelhead redds, reduce channel

22   heterogeneity, decrease the amount of cobble and gravel substrate available to steelhead

23   compared to substrate characterized by sand and silt, and degrade riparian vegetation (resulting

24   in less shade canopy and less steelhead refugia in these streams). The elevated pollutant levels in

25   storm water further degrade water quality in a fashion harmful to SCCC Steelhead.

26   **NFIP Adverse Impacts On Central California Coast Steelhead**

27         76. The Central California Coast Steelhead is a Distinct Population Segment that includes

28   "all naturally spawned populations of steelhead in coastal streams from the Russian River

1    (inclusive) to Aptos Creek (inclusive), and […]." 71 Fed. Reg. 834, 849 (Jan. 5, 2006). The CCC

2    Steelhead is listed as threatened, and requires for its survival and recovery properly functioning

3    habitat, which includes healthy functioning riparian ecosystems including the 100-year

4    floodplain of rivers, streams and tidal waters in Santa Cruz County.

5        77. As NMFS found in its decision listing CCC Steelhead as a threatened species,

6    urbanization is one of the key factors causing declines of steelhead, due to the resulting "loss,

7    degradation, simplification, and fragmentation of habitat." 71 Fed. Reg. 856. NMFS has made

8    similar, correct findings in its critical habitat determinations that urbanization is one of the

9    "activities that threaten the physical and biological features essential to listed salmon and

10   steelhead." 70 Fed. Reg. 52522. As NMFS has further indicated, "the quality of aquatic habitat

11   [for CCC Steelhead] within stream channels is intrinsically related to the adjacent riparian zones

12   and floodplain . . . . Human activities that occur outside the stream can modify or destroy

13   physical and biological features of the stream." *Id*. As NMFS has specifically indicated, habitat

14   modifications effectively promoted by FEMA's NFIP may affect steelhead critical habitat and

15   require ESA section 7 consultation for this reason. See, e.g., 70 Fed. Reg. at 52532.

16       78. CCC Steelhead designated critical habitat includes most rivers and streams in Santa

17   Cruz County north of the Pajaro River. 70 Fed. Reg. 52488, 52562-64, 52572 (Sept. 2, 2005).

18   This designated critical habitat overlaps with the SFHA. Designated CCC Steelhead critical

19   habitat is located in Santa Cruz County within the SFHA on the following FIRM panels:

20   06087C0084E, 06087C0092E, 06087C0094E, 06087C0095E, 06087C0113E, 06087C0115E,

21   06087C0160E, 06087C0180E, 06087C0189E, 06087C0190E, 06087C0195E, 06087C0201E,

22   06087C0202E, 06087C0203E, 06087C0204E, 06087C0206E, 06087C0207E, 06087C0208E,

23   06087C0209E, 06087C0212E, 06087C0216E, 06087C0217E, 06087C0218E, 06087C0219E,

24   06087C0228E, 06087C0235E, 06087C0236E, 06087C0237E, 06087C0238E, 06087C0239E,

25   06087C0245E, 06087C0310E, 06087C0329E, 06087C0331E, 06087C0332E, 06087C0333E,

26   06087C0334E, 06087C0351E, 06087C0352E, 06087C0356E, and 06087C0357E.

27       79. Much of the designated CCC Steelhead habitat in Santa Cruz County is being degraded

28   by floodplain development encouraged by FEMA's NFIP. For example, as NMFS stated in the

2016 CCC Steelhead 5-year Review:

> As natural open space is transformed into urban neighborhoods and waterways are manipulated and engineered for flood control purposes, several hydrologic and aquatic habitat impacts predictably follow and adversely affect freshwater streams and estuarine habitats. During land use conversion (including flood control structure installation), much of the natural terrain is replaced by impervious surfaces (e.g., pavement, structure roofs, etc.), causing rapid runoff of precipitation and shorter, more intense flows; and point and non-point pollution increases as oils, chemicals (e.g, fertilizers, pesticides, etc.) and other pollutants wash into streams following precipitation events. Further, urban development often encroaches onto the floodplain of creeks and rivers, destroying riparian and floodplain habitat. This eliminates refuge habitat important for fish during high flow events, and limits natural hydraulic/geomorphic processes that create and maintain complex instream habitat. In addition to riparian effects, estuarine wetlands important to CCC steelhead have also been adversely affected by urbanization and related land use practices.

2016 CCC Steelhead 5-year Review at 20.

80. High-quality CCC Steelhead freshwater stream habitat is characterized by well-developed riparian vegetation creating canopy that provides extensive shading of stream courses. This is important for maintaining the low water temperatures that CCC Steelhead need. Well-developed mature riparian vegetation, including adjacent wetlands vegetation, also helps anchor streambanks and reduce streamflow velocity by decreasing the rapidity of storm water runoff into stream channels. This helps prevent erosion during high flow events. High erosion rates can promote the deposition of silt in streams that inhibit successful CCC Steelhead spawning.

81. Adjacent wetlands vegetation in riparian corridors also serves as an important source of a healthy benthic macroinvertebrate community—the food source for CCC Steelhead. Well-developed mature riparian vegetation also provides the source of large wood pieces that fall into stream courses and become lodged in streams, which tend to create deeper pools where reservoirs of cool water can be found and which provide other benefits as discussed below.

82. High-quality CCC Steelhead freshwater stream habitat is further characterized by good channel heterogeneity, including densely-spaced hydraulic units (*i.e.*, pool and riffle sequences) and planform (*i.e.*, the stream's longitudinal configuration). Channels tend to be sinuous, *i.e.*, meandering in such streams. This sinuousity, combined with the presence of boulders and other

1    obstructions in the streams (such as fallen large wood pieces as mentioned above) creates

2    significant velocity refugia, *i.e.*, areas of shelter within the stream course from higher flow

3    velocities. Such refugia would be beneficial for steelhead for several reasons: they provide areas

4    to rest and escape very high velocity flows in storm events, areas to spawn and not have redds

5    (nests where eggs are deposited and incubated) scoured by high flows, and areas to feed.

6    Channel meander tends to create point bars, which are the inside portions of the streambed's

7    curves. These point bars push faster flowing water to the other side of the creek which in turn

8    tends to create undercut banks on these opposite streambanks. Undercut banks, *i.e.*, areas where

9    the toe of the bank is side-cut deeper than the overhanging bank, are areas where steelhead can

10   hide from predators and escape high velocity flows.

11          83. Well-developed pool and riffle complexes are further beneficial. The existence of

12   riffles ensures good oxygenation of waters and meeting of steelhead demands for sufficient

13   dissolved oxygen water column values. Pools adjacent to riffle tails are advantageous steelhead

14   feeding areas. Such streams further have substrate that is high in cobbles and gravels necessary

15   for successful CCC Steelhead spawning. Natural stream courses in good undisturbed condition

16   typically also are characterized by backwater or side channel areas adjoining low flow channels

17   (*i.e.*, the thalweg, the continuous, lowest elevation channel feature confining low flows to a well

18   bordered, small area) into which higher flows will spill and spread. Such backwater and side

19   channel areas in good natural condition will have lower flows than the main channel and

20   conditions conducive for CCC Steelhead refuge and feeding, and perhaps even spawning.

21          84. FEMA's NFIP has incentivized and continues to incentivize various sorts of

22   development, including the placement of fill, the construction of buildings, roads, driveways,

23   culverts, revetments, and structures to armor river and stream banks such as retaining walls, that

24   is adversely modifying these characteristics in numerous miles of CCC Steelhead freshwater

25   habitat throughout Santa Cruz County.

26          a.   The NFIP has incentivized development projects that have included the

27   placing of fill material in backwater and side channel areas adjoining CCC Steelhead streams,

28   including riprap and other streambank armoring to protect buildings from erosion related

FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

27

1  damage, as well as the construction of various other structures such as roads, driveways, culverts,

2  pilings that have adversely affected backwater and side channel areas.

3          b.      The NFIP has further incentivized development projects that have

4  facilitated channelization of steelhead streams, reducing beneficial channel heterogeneity in

5  creating more homogeneous channels that are less conducive to steelhead spawning, rearing, and

6  survival.

7          c.      The NFIP has further incentivized development projects that have caused

8  the loss of riparian vegetation, including adjacent wetland vegetation and the benefits associated

9  with such riparian vegetation discussed above.

10         d.      The NFIP has further incentivized development projects that have

11  increased the velocity of runoff into CCC Steelhead streams and the levels of pollutants in such

12  storm water runoff by bringing hardscaping to areas close to such streams in a fashion that has

13  significantly increased the runoff coefficient from land adjoining the streams and development

14  that is a source of pollutant loading in storm water runoff. This increased storm water runoff has

15  increased stream velocity in a manner that has promoted erosion and siltation in steelhead

16  streams. Such erosion and siltation has tended to smother steelhead redds, reduce channel

17  heterogeneity, decrease the amount of cobble and gravel substrate available to steelhead

18  compared to substrate characterized by sand and silt, and degrade riparian vegetation (resulting

19  in less shade canopy and less steelhead refugia in these streams). The elevated pollutant levels in

20  storm water of further degraded water quality in a fashion harmful to CCC Steelhead.

21  **NFIP Adverse Impacts On Central California Coast Coho Salmon**

22         85. The Central California Coast coho salmon is an evolutionarily significant unit that

23  includes "naturally spawned coho salmon originating from rivers south of Punta Gorda,

24  California to and including Aptos Creek, as well as such coho salmon originating from

25  tributaries to San Francisco Bay. This evolutionary significant unit also includes coho salmon

26  from three artificial propagation programs: the Don Clausen Fish Hatchery Captive Broodstock

27  Program; the Scott Creek/King Fisher Flats Conservation Program; and the Scott Creek Captive

28  Broodstock Program." 79 Fed. Reg. 20802, 20816 (April 14, 2014); 70 Fed. Reg. 37160, 37204

1    (June 28, 2005).

2        86. CCC Coho designated critical habitat includes "all river reaches accessible to listed

3    coho salmon [from the Santa Cruz County boundary with San Mateo County] south to the San

4    Lorenzo River." 64 Fed. Reg. 24601 (May 5, 1999). This designated critical habitat is within the

5    SFHA. Designated CCC Coho critical habitat is located in Santa Cruz County within the SFHA

6    on the following FIRM panels: 06087C0084E, 06087C0092E, 06087C0094E, 06087C0095E,

7    06087C0113E, 06087C0115E, 06087C0160E, 06087C0180E, 06087C0189E, 06087C0190E,

8    06087C0195E, 06087C0201E, 06087C0202E, 06087C0203E, 06087C0204E, 06087C0206E,

9    06087C0207E, 06087C0208E, 06087C0209E, 06087C0212E, 06087C0216E, 06087C0217E,

10   06087C0218E, 06087C0219E, 06087C0228E, 06087C0236E, 06087C0238E, 06087C0310E,

11   06087C0329E, 06087C0331E, 06087C0332E, 06087C0333E, and 06087C0334E.

12       87. Much of the designated CCC Coho habitat in Santa Cruz County is being degraded by

13   floodplain development encouraged by FEMA's NFIP. Threats to CCC Coho include

14   development of riparian habitat and floodplains. As NMFS stated in its 2016 5-year Review:

15           many important coho salmon watersheds that overlap with dense urban
16           areas, such as the Russian and San Lorenzo rivers, continually suffer
             aquatic habitat degradation resulting from urban stressors. As natural open
17           space is transformed into urban neighborhoods, several hydrologic and
             aquatic habitat impacts predictably follow. Much of the existing bare soil
18           is replaced by impervious surfaces (e.g., pavement, structure roofs, etc.),
             causing rapid runoff of precipitation and shorter, more intense flood flows.
19           Furthermore, urban development often encroaches onto the floodplain of
20           creeks and rivers, destroying riparian and floodplain habitat important to
             fish during high flow events, and limiting natural hydraulic/geomorphic
21           processes that create and maintain complex instream habitat. Both point
             and non-point pollution increases as oils, chemicals (e.g, fertilizers,
22           pesticides, etc.) and other urban pollutants wash into streams following
23           precipitation events. All of these impacts existed at the time of listing and,
             due to population growth, have likely worsened since.

24   2016 5-Year Review at 18. NMFS further observed that

25           [l]ost wetland and estuarine habitat was an identified factor leading to the
26           initial listing of CCC coho salmon, and continues to hinder habitat
             functionality and productivity at this time. For populations along the coast,
27           estuarine habitats consist primarily of seasonal, "bar-built" lagoons. The
28           lagoons form in spring or summer as sandbars form, separating the

freshwater and marine environments. The lagoons can provide a highly productive environment where rearing juvenile salmonids can experience rapid growth and where the brackish waters provide an opportunity for them to acclimate to saltwater prior to ocean entry. Estuary/lagoons and other low elevation flood-prone habitat also function as important over-wintering habitat for juvenile salmonids, especially coho salmon. Past and present land development adjacent to coastal estuaries and lagoons has degraded tidally-inundated habitat, altered natural estuarine processes, and generally impaired water quality.

2016 5-Year Review at 18.

88. CCC Coho stream habitat is characterized by well-developed riparian vegetation creating canopy that provides extensive shading of stream courses. This is important for maintaining the low water temperatures that CCC Coho need. Well-developed mature riparian vegetation, including adjacent wetlands vegetation, also helps anchor streambanks and reduce streamflow velocity by decreasing the rapidity of storm water runoff into stream channels. This helps prevent erosion during high flow events. High erosion rates can promote the deposition of silt in streams that inhibit successful CCC Coho spawning.

89. Adjacent wetlands vegetation in riparian corridors also serves as an important source of a healthy benthic macroinvertebrate community—the food source for CCC Coho. Well-developed mature riparian vegetation also provides the source of large wood pieces that fall into stream courses and become lodged in streams, which tend to create deeper pools where reservoirs of cool water can be found and which provide other benefits as discussed below.

90. High-quality CCC Coho freshwater stream habitat is further characterized by good channel heterogeneity, including densely-spaced hydraulic units (*i.e.*, pool and riffle sequences) and planform (*i.e.*, the stream's longitudinal configuration). Channels tend to be sinuous, *i.e.*, meandering in such streams. This sinuousity, combined with the presence of boulders and other obstructions in the streams (such as fallen large wood pieces as mentioned above) creates significant velocity refugia, *i.e.*, areas of shelter within the stream course from higher flow velocities. Such refugia would be beneficial for coho for several reasons: they provide areas to rest and escape very high velocity flows in storm events, areas to spawn and not have redds (nests where eggs are deposited and incubated) scoured by high flows, and areas to feed.

1   Channel meander tends to create point bars, which are the inside portions of the streambed's

2   curves. These point bars push faster flowing water to the other side of the creek which in turn

3   tends to create undercut banks on these opposite streambanks. Undercut banks, *i.e.*, areas where

4   the toe of the bank is side-cut deeper than the overhanging bank, are areas where coho can hide

5   from predators and escape high velocity flows.

6   91. Well-developed pool and riffle complexes are further beneficial. The existence of

7   riffles ensures good oxygenation of waters and meeting of coho demands for sufficient dissolved

8   oxygen water column values. Pools adjacent to riffle tails are advantageous coho feeding areas.

9   Such streams further have substrate that is high in cobbles and gravels necessary for successful

10  CCC Coho spawning. Natural stream courses in good undisturbed condition typically also are

11  characterized by backwater or side channel areas adjoining low flow channels (*i.e.*, the thalweg,

12  the continuous, lowest elevation channel feature confining low flows to a well bordered, small

13  area) into which higher flows will spill and spread. Such backwater and side channel areas in

14  good natural condition will have lower flows than the main channel and conditions conducive for

15  CCC Coho refuge and feeding, and perhaps even spawning.

16  92. FEMA's NFIP has incentivized and continues to incentivize various sorts of

17  development, including the placement of fill, the construction of buildings, roads, driveways,

18  culverts, revetments, and structures to armor river and stream banks such as retaining walls, that

19  is adversely modifying these characteristics in numerous miles of CCC Coho freshwater habitat

20  throughout Santa Cruz County.

21          a.      The NFIP has incentivized development projects that have included the

22  placing of fill material in backwater and side channel areas adjoining CCC Coho streams,

23  including riprap and other streambank armoring to protect buildings from erosion related

24  damage, as well as the construction of various other structures such as roads, driveways, culverts,

25  pilings that have adversely affected backwater and side channel areas.

26          b.      The NFIP has further incentivized development projects that have facilitated

27  channelization of coho streams, reducing beneficial channel heterogeneity in creating more

28  homogeneous channels that are less conducive to coho spawning, rearing, and survival.

FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

c.     The NFIP has further incentivized development projects that have caused the loss of riparian vegetation, including adjacent wetland vegetation and the benefits associated with such riparian vegetation discussed above.

d.     The NFIP has further incentivized development projects that have increased the velocity of runoff into CCC Coho streams and the levels of pollutants in such storm water runoff by bringing hardscaping to areas close to such streams in a fashion that has significantly increased the runoff coefficient from land adjoining the streams and development that is a source of pollutant loading in storm water runoff. This increased storm water runoff has increased stream velocity in a manner that has promoted erosion and siltation in coho streams. Such erosion and siltation has tended to smother coho redds, reduce channel heterogeneity, decrease the amount of cobble and gravel substrate available to coho compared to substrate characterized by sand and silt, and degrade riparian vegetation (resulting in less shade canopy and less coho refugia in these streams). The elevated pollutant levels in storm water of further degraded water quality in a fashion harmful to CCC Coho.

**NFIP Adverse Impacts On Marbled Murrelet**

93. The marbled murrelet (*Brachyramphus marmoratus*) is a threatened species under the federal Endangered Species Act. 57 Fed. Reg. 45,328 (Oct. 1, 1992). A small seabird feeding on fish and invertebrates, marbled murrelets spend the majority of their time in near-shore marine waters and come inland to nest. *Id*. Marbled murrelets are threatened due to loss and modification of nesting habitat, which consists of large, old-growth trees near the coastline. *Id*. at 45,328-29; *see also* 81 Fed. Reg. 51,348, 51,351 (Aug. 4, 2016). Forests typically require 200 to 250 years to develop old-growth characteristics necessary to support marbled murrelet nesting. 81 Fed. Reg. at 51,352.

94. Marbled murrelet "productivity is greatest in large, complex-structured forests far from human activity" with "minimal human recreation and settlement." *Id*. at 51,354-55. "Human activities can significantly compromise the effectiveness of the forested areas surrounding nests." *Id*. at 51,355. Among birds in the Pacific Northwest, "marbled murrelet is considered to be one of the most sensitive to forest fragmentation." *Id*.

95. FWS designated critical habitat for marbled murrelet in several watersheds in Santa Cruz County. 71 Fed. Reg. 53838, 53948-51 (Sept. 12, 2006). Designated marbled murrelet critical habitat is located in Santa Cruz County within the SFHA on the following FIRM panels: 06087C0095E, 06087C0160E, and 06087C0180E.

96. Designated marbled murrelet habitat in Santa Cruz County is being degraded by floodplain development encouraged by FEMA's NFIP. FEMA's NFIP has incentivized and facilitated and continues to incentivize and facilitate development, which is having the adverse effects described above, including altering and fragmenting habitat such that they no longer have the characteristics necessary to support Marbled murrelet.

**NFIP Adverse Impacts On Western Snowy Plover**

97. The Western Snowy Plover is a small bird that the FWS listed as threatened on March 5, 1993. 58 Fed. Reg. 12864 (Mar. 5, 1993). WSP habitat includes coastal beach areas, beaches at river/creek mouths, and estuaries.

98. FWS has designated four critical habitat units for the WSP in Monterey County: Jetty Road to Aptos (partially in Monterey County), Elkhorn Slough Mudflats, Monterey to Moss Landing, and Point Sur Beach. 77 Fed. Reg. 36727, 36765-66 (June 19, 2012). Areas of each of these units lie within the SFHA, as summarized in Attachment 19. A visual example of clear overlaps of WSP designated critical habitat and the SFHA is provided through a comparison of a map of critical habitat for Jetty Road to Aptos/Elkhorn Slough Mudflats from the Federal Register notice revising the designation of WSP critical habitat with the effective FIRM panel for that area. (*See* Attachments 5-6).

99. As FWS found in its decision designating WSP critical habitat, development is a key threat to the Jetty Road to Aptos, Elkhorn Slough Mudflats, and Monterey to Moss Landing units, each of which is an important WSP breeding area. 77 Fed. Reg. 36765-66.

100.    FWS has designated four critical habitat units for the WSP in Santa Cruz County: Waddell Creek Beach, Scott Creek Beach, Wilder Creek Beach, and Jetty Road to Aptos. 77 Fed. Reg. 36727, 36764-65 (June 19, 2012). This designated critical habitat is within the SFHA. Designated WSP critical habitat is located in Santa Cruz County within the SFHA on the

1  following FIRM panels: 06087C160E, 06087C190E, 06087C0329E, 06087C0358E,

2  06087C0359E, 06087C0380E, 06087C0389E, 06087C0390E, and 06087C0452E.

3      101.    As FWS found in its decision designating WSP critical habitat, development is a

4  key threat to the designated habitat units in Santa Cruz County, each of which is an important

5  WSP breeding area. 77 Fed. Reg. 36765-66.

6      102.    As the FWS WSP Recovery Plan details, harms to WSP brought by development

7  include:

> Construction of homes, resorts, and parking lots on coastal sand dunes constitutes irrevocable loss of habitat for western snowy plovers […]. In addition to causing direct loss of habitat, there are additional potential adverse impacts to western snowy plovers from urban development []. Increased development increases human use of the beach, thereby increasing disturbance to nesting plovers. When urban areas interface with natural habitat areas, the value of breeding and wintering habitat to native species may be diminished by increased levels of illumination at night (*e.g.*, building and parking lot lights); increased sound and vibration levels; and pollution drift (e.g., pesticides) [] raking removes habitat features for both plovers and their prey, and precludes nests from being established. Also, construction of residential development in or near western snowy plover habitat attracts predators, including domestic cats.

WSP Recovery Plan at 34.[6]

    103.    Designated WSP habitat in Santa Cruz County and Monterey County is being degraded by floodplain development encouraged by FEMA's NFIP. FEMA's NFIP has incentivized and facilitated and continues to incentivize and facilitate this type of construction activity, as such construction activity occurs within areas mapped by FEMA as being within flood prone areas eligible for national flood insurance.

**NFIP Adverse Impacts On Yadon's Piperia**

    104.    Yadon's piperia is a slender perennial herb in the orchid family that is endemic to Monterey County. FWS has listed the plant as endangered. 63 Fed. Reg. 43,100 (Aug. 12, 1998). FWS has designated 8 units of critical habitat for Yadon's piperia in Monterey County. As underscored by the 5-year status review for the plant published by FWS in 2009, "Habitat loss and alteration resulting from previous, current, and proposed developments continue to pose

[6] WSP Recovery Plan, https://www.fws.gov/arcata/es/birds/WSP/documents/RecoveryPlan WebRelease_09242007/WSP_Final_RP_10-1-07.pdf (Aug. 13, 2007).

1    substantial threats to Piperia yadonii." [7] Yadon's Piperia 5-Year Review at 7.

2          105.     At least one of 8 designated critical habitat units for Yadon's piperia in Monterey

3    County overlaps with the SFHA, which FWS has titled sub-unit 6c, located along Seal Rock

4    Creek on the Monterey Peninsula. 72 Fed. Reg. 60410, 60425 (Oct. 24, 2007). A visual example

5    of overlaps of designated critical habitat of Yadon's piperia and the SFHA is provided through a

6    comparison of a map from the Federal Register notice designating critical habitat with the

7    effective FIRM panel for that area.[8] (*See* Attachments 7-8).

8          106.     Harmful influences from surrounding development that the FEMA NFIP has

9    facilitated and incentivized and continues to facilitate and incentivize include drifting of

10   pesticides from landscaped areas associated with development, trampling by humans brought

11   close to the plants' habitat by development, dumping of yard waste, and cutting of vegetation for

12   fire control. *Id*. Habitat fragmentation caused by such development that reduces native vegetation

13   to ''islands'' among roads, residences, and golf courses also threatens Yadon's piperia. 5 Year

14   Plan at 7. Fragmentation caused by NFIP facilitated development prevents gene flow between

15   populations because pollinators are less likely to successfully move through residential and

16   commercial areas to reach islands of native vegetation and because wind-dispersed seeds are less

17   likely to land in areas suitable for germination than seeds carried by pollinators. 5 Year Plan at 7;

18   Designation of Critical Habitat for Piperia yadonii, 72 Fed. Reg. 60410, 60411 (Oct. 24, 2007).

19   This is especially harmful in the case of Yadon's piperia because its blooming season is brief,

20   individuals that flower in one year may not flower the next, and a portion of the population may

21   be completely dormant in any given year. 5 Year Plan at 1. Fragmentation of native plants'

22   habitats caused by development that has been incentivized and facilitated by and is being

23   incentivized and facilitated by the FEMA NFIP may also allow the rise of non-native species that

24   compete with native species for survival. 72 Fed. Reg. 60410, 60423. In sum, designated

25

26   [7] Yadon's Piperia 5-Year Review, https://ecos.fws.gov/docs/five_year_review/doc2575.pdf
     (2009).

27   [8] Subunit 6c partially overlaps with the SFHA that borders Seal Rock Creek in the middle of the
     FIRM panel.

28

1    Yadon's piperia habitat in Monterey County is being degraded by floodplain development

2    encouraged by FEMA's NFIP.

3    **NFIP Adverse Impacts On Purple Amole**

4        107.    The purple amole is a low growing lily that FWS has listed as threatened.

5    Determination of Threatened Status for Chlorogalum purpureum, 65 Fed. Reg. 14878 (Mar. 20,

6    2000). FWS has designated one critical habitat unit for the plant in Monterey County, on private

7    property east of Fort Hunter Ligget near Lockwood, California. 65 Fed. Reg. 14878, 14878. As

8    FWS found in its critical habitat determinations for the plant, key threats to the plant include

9    "alteration of lands" and "direct loss of plants due to construction." 67 Fed. Reg. 65414, 65425

10   (Oct. 24, 2002).

11       108.    The critical habitat unit for the purple amole in Monterey County partially

12   overlaps with the SFHA, as summarized in Attachment 19. A visual example of overlaps of

13   designated critical habitat of purple amole and the SFHA is provided through a comparison a

14   map of critical habitat for purple amole from the Federal Register notice designating critical

15   habitat with the effective FIRM panel for that area. (*See* Attachments 9-10).

16       109.    The elements of critical habitat for the purple amole include well-drained, red

17   clay soils with a large component of gravel and pebbles on the upper soil surface. 67 Fed. Reg.

18   65414, 65425. The purple amole also thrives in plant communities that support associated

19   pollinators and predator-prey species, including grassland, blue oak woodland or oak savannahs,

20   and open areas within shrubland communities. *Id*. Development that the FEMA NFIP has

21   facilitated and incentivized and continues to facilitate and incentivize disturbs the soil in these

22   ecosystems and eliminates the open areas required for the purple amole and other associated

23   plants and animals to flourish. *Id*. The health and proximity of associated plants and animals is

24   vital because the purple amole depends upon the presence of pollinators for its survival. *Id*.

25   There must also be little cover of other species, which compete for resources available for

26   growth and reproduction in order, for the purple amole to thrive. *Id*. In upsetting natural

27   ecosystems, development that the FEMA NFIP has facilitated and incentivized and continues to

28   facilitate and incentivize may allow invasive, non-native species to cover species such as the

1   purple amole and compete with native species for survival. *Id*. For this reason, exotic plant

2   invasions are particularly likely in habitats disturbed by human activities. Bjerknes, *et al*., Effects

3   of an Exotic Plant and Habitat Disturbance on Pollinator Visitation and Reproduction in a Boreal

4   Forest Herb, Am. J. Botany (2006) (*Available at*

5   http://www.amjbot.org/content/93/6/868.full.pdf+html). In sum, designated Yadon's piperia

6   habitat in Monterey County is being degraded by floodplain development encouraged by

7   FEMA's NFIP.

8   **NFIP Adverse Impacts On California Tiger Salamander**

9       110.     FWS has listed the California tiger salamander as threatened. 69 Fed. Reg. 47212

10  (Aug. 4, 2004). The FWS has designated as CTS critical habitat an area inhabited by CTS named

11  "Unit 3, Haystack Hill Unit," located in the upper reaches of the Carmel River watershed. This

12  Unit 3 area partially overlaps with the SFHA. As NMFS has found in its critical habitat

13  determinations, key threats to Unit 3 include "erosion and sedimentation" and "disturbance

14  activities associated with development that may alter the hydrologic functioning of the aquatic

15  habitat." 70 Fed. Reg. 49830, 49403 (Aug. 23, 2005). The overlap of the SFHA and Unit 3 is

16  summarized in Attachment 19. A visual example of overlaps of designated critical habitat of the

17  CTS and the SFHA is provided through a comparison of a map of critical habitat for the CTS

18  from the Federal Register notice of designation of critical habitat with one of the effective FIRM

19  panels for that area.[9]  (*See* Attachments 11-12).

20      111.     FEMA's NFIP has incentivized and facilitated and continues to incentivize and

21  facilitate development, including the placement of fill, the construction of buildings, roads,

22  driveways, culverts, and revetments, which is having the adverse effects described above,

23  including filling in wetlands and aquatic habitat or altering them such that they no longer have

24  the hydrology necessary to support CTS (as when water flows are cut off to areas or where they

25

26  _____

27  [9] The overlap occurs near where Carmel Valley Road enters the critical habitat on the map of critical habitat for the CTS from the Federal Register notice designation of critical habitat, which is on the lower left corner of the FIRM panel for that area.

28

1  are altered in such a fashion that they no longer retain water or support the aquatic/wetland

2  vegetation that provides proper habitat function).

3  **NFIP Adverse Impacts On Santa Cruz Long-toed Salamander**

4        112.     FWS has listed the Santa Cruz Long-toed salamander as endangered. 32 Fed. Reg.

5  4001 (March 11, 1967). There are several known areas in Santa Cruz County occupied by the

6  SCLTS. SCLTS Recovery Plan at 2 (Figure 1) and 13 (Table 1) (identifying Valencia Lagoon,

7  Seascape Pond, Calabasas Pond, Ellicott Pond, Buena Vista Pond, Rancho Road Pond,

8  Anderson's Pond, Green's Pond, Merk Road Pond, and Corralitos creek drainage). SCLTS

9  occupies areas around ponds and sloughs, using the wet areas to breed and completing the

10  remainder of its lifecycle in the surrounding upland areas. *Id*. at 25-31. SCLTS depends on

11  upland areas to migrate to and from breeding sites.

12        113.     Filling and draining of ponds and sloughs and fragmentation of upland habitat

13  pose significant risks to SCLTS. According the FWS, "anthropogenic changes (including

14  agricultural, industrial and urban developments, highways and railroads) have reduced the

15  habitat available to [SCLTS] and tended to isolate populations." *Id*. at 10-11 and 26 (Table 2).

16        114.     SCLTS habitat is located in areas within the designated flood hazard zones in

17  Santa Cruz County on the following FIRM panels: 06087C0275E, 06087C0357E,

18  06087C0380E, 06087C0381E, 06087C0383E, 06087C0384E, 06087C0392E, and

19  06087C0411E.

20        115.     FEMA's NFIP has incentivized and facilitated and continues to incentivize and

21  facilitate development, including the placement of fill, the construction of buildings, roads,

22  driveways, culverts, and revetments, which is having the adverse effects described above,

23  including filling in wetlands and aquatic habitat or altering and fragmenting upland habitat such

24  that they no longer have the characteristics necessary to support SCLTS.

25  **NFIP Adverse Impacts On California Red-Legged Frog**

26        116.     FWS has listed the California red-legged frog as threatened. 72 Fed. Reg. 12816

27  (Mar. 17, 2010). The FWS has designated a number of CRLF critical habitat units in Monterey

28

County, at least three of which overlap with the SFHA, which are units MNT-1 (Elkhorn Slough), MNT-2 (Carmel River), and MNT-3 (Big Sur Coast). The overlaps of the SFHA and CRLF habitat are summarized in Attachment 19. A visual example of overlaps of designated critical habitat of the CLRF and the SFHA is provided through a comparison of a general map of units MNT-1, MNT-2, and MNT-3 from the Federal Register notice designating CRLF critical habitat with the effective FIRM panel for the mouth of the Carmel River (in MNT-2). (*See* Attachments 13-14).

117.     The FWS has designated two CRLF critical habitat units in Santa Cruz County. One is located along the coastline of northern Santa Cruz County, plus a small area in southern San Mateo County, from approximately Green Oaks Creek to Wilder Creek. The unit includes the following watersheds: Green Oaks Creek, Waddell Creek, East Waddell Creek, Scott Creek, Big Creek, Little Creek, San Vicente Creek, Laguna Creek, Majors Creek, and Wilder Creek. 73 Fed. Reg. 53492, 53507, 53618 (Sept. 16, 2008). The other is located north of the mouth of the Pajaro River and seaward of California Highway 1. It includes locations in the Watsonville Slough system, including all or portions of Gallighan, Hanson, Harkins, Watsonville, Struve, and the West Branch of Struve sloughs. The unit includes portions of the Corralitos Lagoon and Mouth of the Pajaro River watersheds. *Id*. at 53507-08, 53618. CRLF critical habitat is located in areas within the designated flood hazard zones in Santa Cruz County on the following FIRM panels: 06087C0160E, 06087C0180E, 06087C0189E, 06087C0190E, 06087C0195E, 06087C0310E, 06087C0380E, 06087C0389E, 06087C0390E, 06087C0391E, 06087C0393E, 06087C0394E, 06087C0452E, and 06087C0456E.

118.     As the FWS CRLF Recovery Plan has stated, "Current and future urbanization poses a significant threat to the California red-legged frog." CRLF Recovery Plan at 17.[10] Declining populations of CRLF are attributed to many factors associated with development and urbanization, including degradation and loss of habitat, degradation of water quality, cover of non-native plants, use of pesticides, introduction of predators, impoundments, and water

---

[10] CRLF Recovery Plan, http://ecos.fws.gov/docs/recovery_plan/020528.pdf (May 28, 2002).

diversions. CRLF Species Information.[11] The fragmentation of existing habitat and colonization by nonnative species may represent the most significant threats posed by development. *Id.* Juveniles disperse from breeding sites to habitats that provide sheltering vegetation and scattered wetlands or streams, including forested areas, nonnative grasslands, croplands, and pastures. 72. Fed. Reg. 12816, 12818. They are unable to disperse through urbanized or suburban areas, suburban developments, or areas separated from breeding habitat by impassible barriers such as highways and freeways. *Id.* Passable roadways that are heavily used by vehicles also result in a high rate of mortality. *Id.*

119.     Adults require dense, shrubby, or riparian vegetation associated with deep (greater than 2⅓ feet) still or slow moving water. CRLF Species Information. The frogs thrive when they live in deep-water pools with a dense cover of overhanging willows and surrounding cattails to protect from predators and dessication. *Id.* Well-vegetated areas within the riparian corridor may also provide sheltering habitat during the winter. *Id.* Development paves over native habitat in aquatic and riparian areas and uproots the vegetation required for the frogs to survive. *Id.* Developments that involve diversion or impoundment of water also threaten the frogs. *Id.* Impoundment and diversion of water may lead to loss of breeding sites at pools and backwaters within streams and creeks, ponds, marshes, springs, sag ponds, dune ponds and lagoons or loss of deeper water habitat required for adults to thrive. *Id.*

120.     Decreases in water quality associated with development also harm CRLF. *Id.* When eggs are exposed to salinity levels greater than 4.5 parts per thousand, 100 percent mortality occurs. CRLF Recovery Plan at 15. Larvae die when exposed to salinity levels greater than 7.0 parts per thousand. *Id.* Early embryos of the frogs are tolerant of temperatures only between 9 and 21 degrees Celsius. *Id.*

121.     FEMA's NFIP has incentivized and facilitated and continues to incentivize and facilitate development, including the placement of fill, the construction of buildings, roads,

---

[11] CRLF Species Information, https://www.fws.gov/sacramento/ES_Species/Accounts/Amphibians-Reptiles/es_ca-red-legged-frog.htm (Last updated Sept. 16, 2016).

driveways, culverts, revetments, and structures to armor river and stream banks such as retaining walls, which is having the adverse effects described above.

**NFIP Adverse Impacts On Vernal Pool Fairy Shrimp**

122.     Vernal pool fairy shrimp are small freshwater crustaceans that FWS has listed as threatened. 59 Fed. Reg. 48136 (Sept. 19, 1994). The FWS has designated a number of units of VPFS critical habitat within Monterey County, at least three of which overlap with the SFHA. These overlaps include Unit 28 (northeast of Kings City), Unit 29A (around Lockwood), and Unit 29B (around Bradley), all within the greater Salinas River watershed. 71 Fed. Reg. 7174, 7176. Portions of this designated critical habitat are within the SFHA, as summarized in Attachment 19. A visual example of overlaps of designated critical habitat of the VPFS and the SFHA is provided through a comparison of a map from the FWS Federal Register notice designating VPFS critical habitat that includes Unit 29A with the effective FIRM panel for part of the area of Unit 29A.[12] (*See* Attachments 15-16). As FWS concluded in its five-year status review of the VPFS, "the loss and modification of vernal pool habitat continues to be the primary threat to the vernal pool fairy shrimp."[13] VPFS Five-Year Status Review at 35. Even where the VPFS has appropriate habitat, "loss of vernal pool habitat is expected to continue as urban boundaries expand further." *Id.* This is expected even in protected areas, since the "urbanization of lands surrounding conserved areas results in the fragmentation of protected habitats, likely preventing dispersal of the shrimp within and between populations, as well as causing increased edge effects to pool complexes." *Id.*

123.     FEMA's NFIP has incentivized and facilitated and continues to incentivize and facilitate development, including the placement of fill, the construction of buildings, roads, driveways, culverts, and revetments, which is having the adverse effects described above, including filling in vernal pools or altering them such that they no longer have the hydrology

---

[12] On the map of the FIRM panel, Jolon Road corresponds to the black line (road) between the northwest and southeast sections of Unit 29A on the FWS map of critical habitat.
[13] VPFS 5-Year Review, https://ecos.fws.gov/docs/five_year_review/doc1150.pdf (Sept. 2007).

1   necessary to support VPFS (as when water flows are cut off to these pools or where they are

2   altered in such a fashion as to no longer retain water).

3   **NFIP Adverse Impacts On Monterey Spineflower**

4   124.    The Monterey spineflower is a low-growing herb in the buckwheat family that the

5   FWS has listed as threatened. 59 Fed. Reg. 5499 (Feb. 4, 1994).

6   125.    The FWS has designated as critical habitat for the plant at least two coastal units

7   in Monterey County that likely partially overlap with the SFHA: Unit 2, Moss Landing (coastal

8   area north and south) and Unit 3, Marina (just south of Salinas River mouth to Monterey). Two

9   other units designated by FWS that are inland overlap with the SFHA: Unit 8, Fort Ord, and Unit

10  9, Soledad (area in Salinas River floodplain south of Soledad). 73 Fed. Reg. 1525, 1534-36 (Jan.

11  9, 2008). Portions of this designated critical habitat are within the SFHA, as summarized in

12  Attachment 19. A visual example of overlaps of designated critical habitat of the Monterey

13  spineflower and the SFHA is provided through a comparison of a map of Unit 9 from the FWS

14  Federal Register notice designating Monterey spineflower critical habitat with the effective

15  FEMA FIRM panel for the Soledad area. (*See* Attachments 17-18).

16  126.    The FWS has designated as critical habitat for the plant at one unit in Santa Cruz

17  County that overlaps with the SFHA: Unit 1, Sunset (coastal beaches, dunes, and bluffs locations

18  west of Watsonvillle). 73 Fed. Reg. 1525, 1534 (Jan. 9, 2008). Designated Monterey spineflower

19  critical habitat is located in areas within the designated flood hazard zones in Santa Cruz County

20  on the following FIRM panels: 06087C0389E and 06087C0390E.

21  127.    As FWS found in its critical habitat determinations, known occurrences of the

22  Monterey spineflower "are threatened by direct and indirect effects from habitat fragmentation

23  and loss and edge effects resulting from urban development." 73 Fed. Reg. 1525, 1532. Threats

24  to the habitat of the Monterey spineflower include, specifically: industrial and recreational

25  development, road development, human and equestrian recreational use, and dune stabilization

26  as a result of the introduction of non-native species. 59 Fed. Reg. 5499, 5505. Studies indicate

27  that a high diversity of pollinators resulting from exposure, proximity to the coast, and the

28  structure, composition, and density of the surrounding vegetation are important to the survival of

the Monterey spineflower. Murphy 2003b at 28–63, cited in 71 Fed. Reg. 75189, 75191 (Dec.14, 2006). This is attributed to the fact that the Monterey spineflower does not develop an extensive seed bank, which means that it relies on the previous year's seed set as opposed to a large seed bank that remains viable for decades like some other species. *Id*. Thus, development that destroys the vegetation home to pollinators is costly for the Monterey spineflower. *Id*. Even one year wherein pollination is threatened is costly for the entire species. *Id*.

128.     In encouraging development in areas home to the Monterey spineflower and its pollinators, the NFIP has threatened and continues to threaten the persistence of the species. The placement of fill and construction of buildings, roads, driveways, culverts, and revetments paves over valuable, increasingly rare habitat home to Monterey spineflower and associated plants and animals. The health and proximity of associated plants and animals is crucial for the survival of plants such as the Monterey spineflower because they depend upon the presence of pollinators for reproduction. *Id*. There must also be little cover of other species that compete for resources available for growth and reproduction in order for the species to thrive. *Id*. Development allows invasive, non-native species to cover native species such as the Monterey spineflower. *Id*. Exotic invasions are particularly likely in habitats disturbed by human activities and have devastating effects upon the pollination and, thus, reproduction of native species. Bjerknes, *et al*.

129.     FEMA's NFIP has incentivized and facilitated and continues to incentivize and facilitate development, including the placement of fill, the construction of buildings, roads, driveways, culverts, and revetments, which is having the adverse effects described above, including altering habitat such that they no longer have the characteristics necessary to support Monterey spineflower.

## FEMA VIOLATIONS OF THE ENDANGERED SPECIES ACT

130.     Since implementation of the NFIP "may affect" designated critical habitat discussed above, FEMA's implementation of the NFIP in Monterey County and Santa Cruz County is subject to the strict substantive and procedural standards imposed by ESA's section 7.

131.     FEMA's discretionary management of the NFIP in Monterey County and Santa Cruz County constitutes an agency action requiring ESA section 7 consultation.

132.     To date FEMA has failed to consult pursuant to ESA section 7 with NMFS or FWS over FEMA's adoption of or amendments to the Monterey County FIS/FIRM, establishment of minimum eligibility requirements, community rating system, issuance of LOMCs, or issuance of financial assistance pursuant to the FEMA Public Assistance Program, Individual and Households Program, and Hazard Mitigation Grant Program. Likewise, FEMA has failed to fulfill its substantive ESA section 7(a)(2) duties with respect to these NFIP activities.

133.     Moreover, FEMA has also failed to utilize its authority to implement the NFIP in a manner promoting the conservation of the Monterey Listed Species in Monterey County, in violation of its substantive duties under ESA section 7(a)(1).

134.     To date FEMA has failed to consult pursuant to ESA section 7 with NMFS or FWS over FEMA's adoption of or amendments to the Santa Cruz County FIS/FIRM, establishment of minimum eligibility requirements, community rating system, or issuance of LOMCs. Likewise, FEMA has failed to fulfill its substantive ESA section 7(a)(2) duties with respect to these NFIP activities.

135.     Moreover, FEMA has also failed to utilize its authority to implement the NFIP in a manner promoting the conservation of the Santa Cruz Listed Species in Santa Cruz County, in violation of its substantive duties under ESA section 7(a)(1).

**FEMA Violation of Procedural Requirements of ESA Section 7(a)(2)**

**FEMA Completed the Monterey Countywide FIRM and FIS Without ESA Section 7 Consultation.**

136.     In 1974, FEMA issued the first NFIP maps for certain Monterey County communities. FEMA, Flood Insurance Study, Monterey County, California and Incorporated Areas, April 2, 2009 ("FIS") at 112-113. On October 2, 2008, FEMA issued Letter(s) of Final Determination ("LFD") for Monterey County, which is a letter from FEMA to the Chief Executive Office of a community that states that the new/updated FIRM will become effective in six months and notifies the community that they must adopt a compliant floodplain management ordinance. Six months after issuance of the LFD, the Monterey County FIRM became effective

on April 2, 2009.[14] The SFHA overlaps extensively with designated critical habitat for the

Monterey Listed Species in Monterey County, yet at no point during the process of developing

the effective FIRM or FIS did FEMA conduct any section 7 consultation as required by the ESA.

**FEMA Approved Monterey's Floodplain Ordinances Without ESA Section 7 Consultation.**

137.     Following FEMA's issuance of the new (effective) FIRM and FIS in April 2009,

Monterey County was required to adopt or amend floodplain management regulations to reflect

the changes in the new FIRM and FIS report. Monterey County adopted revised floodplain

ordinances, located at Chapter 16.16 of the Monterey County Code, on October 6, 2009, through

Order Number 5139, § 1, with an effective date of November 6, 2009. Monterey County also

adopted additional floodplain regulations for land use in the Carmel Valley floodplain, located at

Chapter 21.64 of the Monterey County Code, added by Order Number 5135, § 134, dated July 7,

2009.

138.     FEMA subsequently approved Monterey County's revised floodplain ordinances.

139.     FEMA had and continues to have a duty to initiate ESA section 7 consultation

concerning its approval of Monterey County's revised floodplain ordinances to garner an

evaluation by NMFS and FWS of the impact of these floodplain ordinances and FEMA's

approval of these ordinances on the Listed Species and their critical habitat. However, FEMA

has not requested any ESA section 7 consultation concerning its approval of Monterey County's

revised floodplain ordinances.

**FEMA Has Implemented the Community Rating System in Monterey County Without ESA Section 7 Consultation.**

140.     As FEMA is aware, it has approved Monterey County's participation in the

Community Rating System (CRS) without undertaking any ESA section 7 consultation in

violation of the ESA. *See NWF*, 345 F. Supp. 2d 1151, 1174 (W.D. Wash. 2004) ("by offering

---

[14] FEMA issued a preliminary Monterey countywide FIRM and FIS on November 13, 2015. FEMA has failed to conduct any Section 7 consultation on the preliminary Monterey County FIRM or FIS as required by the ESA.

discounts to communities that adopt certain types of regulations, FEMA could encourage the adoption of salmon-friendly measures in local communities. For these reasons, formal consultation is required.")

**FEMA Approved LOMCs in Monterey County in Critical Habitat Without ESA Section 7 Consultation.**

141.    FEMA has approved at least twenty LOMCs that are located within designated critical habitat, as detailed in the chart below, without ESA section 7 consultation in violation of the ESA. For example, FEMA approved a LOMR-F numbered 14-09-1033A-060195 in Carmel-by-the-Sea on March 27, 2014, which removed property that is in CRLF critical habitat from the SFHA.

142.    FEMA has issued CLOMR-Fs, CLOMRs, or CLOMAs in areas of critical habitat for the Monterey Listed Species in Monterey County without undertaking ESA section 7 consultation. The development in such critical habitat facilitated by FEMA-issued CLOMR-Fs, CLOMRs, or CLOMAs has adversely modified critical habitat for the Monterey Listed Species.

**FEMA Has Implemented Its Disaster Preparedness, Mitigation, and Recovery Programs in Monterey County without ESA Section 7 Consultation**

143.    FEMA has administered and continues to administer its Disaster Preparedness, Mitigation, and Recovery Programs for repairing and preventing flood related damages, which promote the placement of facilities and structures in flood prone locations and replacement of damaged facilities and structures in their original flood prone locations. In turn, this has led to repeated disturbance of designated critical habitat for SCCC Steelhead in Monterey County by facilitating construction activity in flood prone locations that are also critical habitat for the species.

144.    FEMA has not completed ESA section 7 consultation with either FWS or NMFS concerning FEMA's administration of the Disaster Preparedness, Mitigation, and Recovery Programs. As noted, FEMA has completed only its Tier 1 Programmatic Biological Assessment for USFWS: Disaster, Mitigation, and Preparedness Programs in Arizona, California and Nevada. In turn, FWS has issued only its Tier 1 Programmatic Biological Opinion for FEMA's

Disaster, Mitigation, and Preparedness Programs in Arizona, California, and Nevada (April 27, 2016) ("FWS Tier 1 BiOp"). The FWS Tier 1 BiOp expressly notes that "This consultation does not contain our evaluation of the effects of the Programs on threatened and endangered species or designated critical habitat throughout the three States." The FWS Tier 1 BiOp further notes that two more rounds of consultation are contemplated and will be required before programmatic ESA consultation between FEMA and FWS on the programs in issue is complete. FEMA has further failed to complete any aspect of ESA section 7 consultation with NMFS concerning the programs in issue.

**FEMA Completed the Santa Cruz Countywide FIRM and FIS Without ESA Section 7 Consultation.**

145.     In 1974, FEMA issued the first NFIP maps for certain Santa Cruz County communities. In 2006, FEMA revised the NFIP Maps for Santa Cruz County. Revised FIRM panels were adopted again by FEMA on May 16, 2012.[15] As detailed above, the SFHA overlaps extensively with habitat, including designated critical habitat for the Santa Cruz Listed Species, yet at no point during the process of developing the effective FIRM or FIS did FEMA conduct any section 7 consultation as required by the ESA. *See NWF*, 345 F. Supp. 2d at 1173 ("FEMA must consult on its mapping regulations and its revisions of flood map.").

146.     Further, FEMA is currently in the process of revising the FIRM and FIS for Santa Cruz County. To date, FEMA has not engaged in any section 7 consultation as required by the ESA during these processes.

**FEMA Approved Santa Cruz County's Floodplain Ordinances Without ESA Section 7 Consultation.**

147.     Following FEMA's issuance of the new (effective) FIRM and FIS, Santa Cruz County was required to adopt or amend floodplain management regulations to reflect the

---

[15] FEMA issued a preliminary Santa Cruz countywide FIS on October 31, 2016. FEMA has also issued several new preliminary FIRM panels for certain areas of Santa Cruz County. FEMA has failed to conduct any Section 7 consultation on the preliminary Santa Cruz County FIRM or FIS as required by the ESA.

changes in the new FIRM and FIS report. Santa Cruz County adopted revised floodplain ordinances, located at Chapter 16.10 of the Santa Cruz County Code.

148.     FEMA subsequently approved Santa Cruz County's floodplain ordinances. FEMA had and continues to have a duty to initiate ESA section 7 consultation concerning its approval of Santa Cruz County's floodplain ordinances to garner an evaluation by NMFS and FWS of the impact of these floodplain ordinances and FEMA's approval of these ordinances on the Listed Species and their critical habitat. However, FEMA has not requested any ESA section 7 consultation concerning its approval of Santa Cruz County's floodplain ordinances.

**FEMA Has Implemented the Community Rating System in Monterey County Without ESA Section 7 Consultation.**

149.     FEMA has approved Santa Cruz County's participation in the Community Rating System (CRS) without undertaking any ESA section 7 consultation in violation of the ESA. *See NWF*, 345 F. Supp. 2d 1151, 1174 (W.D. Wash. 2004) ("by offering discounts to communities that adopt certain types of regulations, FEMA could encourage the adoption of salmon-friendly measures in local communities. For these reasons, formal consultation is required.")

**FEMA Approved LOMCs in Critical Habitat Without ESA Section 7 Consultation.**

150.     FEMA has approved at least ninety-one LOMCs that are located within habitat of Santa Cruz Listed Species, including in designated critical habitat without ESA section 7 consultation in violation of the ESA.

151.     FEMA has issued CLOMR-Fs, CLOMRs, or CLOMAs in areas of critical habitat for the Santa Cruz Listed Species in Santa Cruz County without undertaking ESA section 7 consultation. The development in such critical habitat facilitated by FEMA-issued CLOMR-Fs, CLOMRs, or CLOMAs has adversely modified critical habitat for the Santa Cruz Listed Species.

**FEMA Has Implemented Its Disaster Preparedness, Mitigation, and Recovery Programs in Santa Cruz County without ESA Section 7 Consultation**

152.     FEMA has administered and continues to administer its Disaster Preparedness, Mitigation, and Recovery Programs for repairing and preventing flood related damages, which promote the placement of facilities and structures in flood prone locations and replacement of

1   damaged facilities and structures in their original flood prone locations. In turn, this has led to

2   repeated disturbance of designated critical habitat for SCCC Steelhead in Santa Cruz County by

3   facilitating construction activity in flood prone locations that are also critical habitat for the

4   species.

5   153.    FEMA has not completed ESA section 7 consultation with either FWS or NMFS

6   concerning FEMA's administration of the Disaster Preparedness, Mitigation, and Recovery

7   Programs. As noted, FEMA has completed only its Tier 1 Programmatic Biological Assessment

8   for USFWS: Disaster, Mitigation, and Preparedness Programs in Arizona, California and

9   Nevada. In turn, FWS has issued only its Tier 1 Programmatic Biological Opinion for FEMA's

10   Disaster, Mitigation, and Preparedness Programs in Arizona, California, and Nevada (April 27,

11   2016) ("FWS Tier 1 BiOp"). The FWS Tier 1 BiOp expressly notes that "This consultation does

12   not contain our evaluation of the effects of the Programs on threatened and endangered species

13   or designated critical habitat throughout the three States." The FWS Tier 1 BiOp further notes

14   that two more rounds of consultation are contemplated and will be required before programmatic

15   ESA consultation between FEMA and FWS on the programs in issue is complete. FEMA has

16   further failed to complete any aspect of ESA section 7 consultation with NMFS concerning the

17   programs in issue.

18   **The Monterey Countywide NFIP Implementation Violated ESA Section 7(a)(2) Substantive**
19   **Duties.**

20   154.    In addition to ESA section 7(a)(2)'s procedural requirements that mandate that

21   each federal agency formally consult with the appropriate wildlife service if a proposed action

22   may adversely affect a listed species, a federal agency also has an independent ESA section

23   7(a)(2) substantive duty to ensure that any action authorized, funded, or carried out by the

24   agency is not likely to (1) jeopardize the continued existence of any threatened or endangered

25   species or (2) result in the destruction or adverse modification of the critical habitat of such

26   species. 16 U.S.C. § 1536(a)(2). FEMA is violating its substantive ESA section 7(a)(2) duties by

27   implementing the NFIP in Monterey County in a fashion that is facilitating the adverse

28

modification of critical habitat for the Monterey Listed Species and it is jeopardizing the continued existence of the Monterey Listed Species as described above.

**The Santa Cruz Countywide NFIP Implementation Violated ESA Section 7(a)(2) Substantive Duties.**

155.    In addition to ESA section 7(a)(2)'s procedural requirements that mandate that each federal agency formally consult with the appropriate wildlife service if a proposed action may adversely affect a listed species, a federal action agency also has an independent ESA section 7(a)(2) substantive duty to ensure that any action authorized, funded, or carried out by the agency is not likely to (1) jeopardize the continued existence of any threatened or endangered species or (2) result in the destruction or adverse modification of the critical habitat of such species. 16 U.S.C. § 1536(a)(2). FEMA is violating its substantive ESA section 7(a)(2) duties by implementing the NFIP in Santa Cruz County in a fashion that is facilitating the adverse modification of critical habitat for the Santa Cruz Listed Species and it is jeopardizing the continued existence of the Santa Cruz Listed Species as described further above.

**FEMA's NFIP Implementation in Monterey County Is Violating ESA Section 7(a)(1).**

156.    ESA section 7(a)(1) imposes an affirmative duty on FEMA to use its authorities to further the ESA's purposes by carrying out programs for the "conservation" of the Listed Species. 16 U.S.C. § 1536(a)(1). FEMA is violating its ESA section 7(a)(1) duties by implementing the NFIP in a fashion that includes no measures to promote the conservation of the Monterey Listed Species in Monterey County or improve the habitat for such species. Instead, the only actions taken by FEMA in implementing the NFIP that have affected the Monterey Listed Species have affected these species adversely.

157.    Since FEMA's ongoing implementation of the NFIP within Monterey County is a federal agency action that may affect the Monterey Listed Species, FEMA must remedy its continuing failure to comply with the ESA by immediately requesting ESA section 7 consultation with NMFS and FWS.

//

//

**FEMA's NFIP Implementation in Santa Cruz County Is Violating ESA Section 7(a)(1).**

158.    ESA section 7(a)(1) imposes an affirmative duty on FEMA to use its authorities to further the ESA's purposes by carrying out programs for the "conservation" of the Listed Species. 16 U.S.C. § 1536(a)(1). FEMA is violating its ESA section 7(a)(1) duties by implementing the NFIP in a fashion that includes no measures to promote the conservation of the Listed Species in Santa Cruz County or improve the habitat for such species. Instead, the only actions taken by FEMA in implementing the NFIP that have affected the Santa Cruz Listed Species have affected these species adversely.

159.    Since FEMA's ongoing implementation of the NFIP within Santa Cruz County is a federal agency action that may affect the Santa Cruz Listed Species, FEMA must remedy its continuing failure to comply with the ESA by immediately requesting ESA section 7 consultation with NMFS and FWS.

## FIRST CLAIM FOR RELIEF

### FEMA Procedural Violation of 16 U.S.C. § 1536(a)(2)

**Request for Declaratory Relief and Injunction to Compel FEMA
to Comply with 16 U.S.C. § 1536(a)(2)**

160.    EcoRights reasserts and realleges the preceding paragraphs above.

161.    The ESA requires that federal agencies ensure that agency actions are not likely to jeopardize the continued existence of endangered or threatened species or destroy or adversely modify designated critical habitat, and requires an interagency consultation process to ensure that agencies fulfill these mandates. 16 U.S.C. § 1536(a)(2).

162.    FEMA has violated these procedural requirements of the ESA and its implementing regulations by its failure to initiate and complete consultation with NMFS and FWS to ensure that its ongoing administration of the NFIP, an action that may affect listed species in Monterey County, does not jeopardize such federally protected species or destroy or adversely modify designated critical habitat.

//

//

**SECOND CLAIM FOR RELIEF**

**FEMA Substantive Violation of 16 U.S.C. § 1536(a)(2)**

**Request for Declaratory Relief and Injunction to Compel FEMA
to Comply with 16 U.S.C. § 1536(a)(2)**

163.    EcoRights reasserts and realleges the preceding paragraphs above.

164.    The ESA requires that for any proposed action that may adversely affect a listed species, a federal agency has an independent ESA section 7(a)(2) substantive duty to ensure that any action authorized, funded, or carried out by the agency is not likely to (1) jeopardize the continued existence of any threatened or endangered species or (2) result in the destruction or adverse modification of the critical habitat of such species. 16 U.S.C. § 1536(a)(2).

165.    FEMA has violated its substantive ESA section 7(a)(2) duties by implementing the NFIP in Monterey County in a fashion that is facilitating the adverse modification of critical habitat for the Monterey Listed Species and thereby jeopardizing the continued existence of the Monterey Listed Species.

**THIRD CLAIM FOR RELIEF**

**FEMA Violation of 16 U.S.C. § 1536(a)(1)**

**Request for Declaratory Relief and Injunction to Compel FEMA
to comply with 16 U.S.C. § 1536(a)(1)**

166.    EcoRights reasserts and realleges the preceding paragraphs above.

167.    The ESA requires that FEMA, in consultation with NMFS and FWS, use its authorities in furtherance of the purposes of the ESA by developing and carrying out programs for the conservation of threatened and endangered species. 16 U.S.C. § 1536(a)(1).

168.    FEMA has violated the requirements of the ESA by its failure to develop and carry out programs for the conservation of federally listed species in Monterey County in consultation with NMFS and FWS.

//

//

//

1

2

3

4

**FOURTH CLAIM FOR RELIEF**

**FEMA Procedural Violation of 16 U.S.C. § 1536(a)(2)**

**Request for Declaratory Relief and Injunction to Compel FEMA
to Comply with 16 U.S.C. § 1536(a)(2)**

5

169.     EcoRights reasserts and realleges the preceding paragraphs above.

6

7

8

9

170.     The ESA requires that federal agencies ensure that agency actions are not likely to jeopardize the continued existence of endangered or threatened species or destroy or adversely modify designated critical habitat, and requires an interagency consultation process to ensure that agencies fulfill these mandates. 16 U.S.C. § 1536(a)(2).

10

11

12

13

14

171.     FEMA has violated these procedural requirements of the ESA and its implementing regulations by its failure to initiate and complete consultation with NMFS and FWS to ensure that its ongoing administration of the NFIP, an action that may affect listed species in Santa Cruz County, does not jeopardize such federally protected species or destroy or adversely modify designated critical habitat.

15

16

17

18

**FIFTH CLAIM FOR RELIEF**

**FEMA Substantive Violation of 16 U.S.C. § 1536(a)(2)**

**Request for Declaratory Relief and Injunction to Compel FEMA
to Comply with 16 U.S.C. § 1536(a)(2)**

19

172.     EcoRights reasserts and realleges the preceding paragraphs above.

20

21

22

23

24

173.     The ESA requires that for any proposed action that may adversely affect a listed species, a federal agency has an independent ESA section 7(a)(2) substantive duty to ensure that any action authorized, funded, or carried out by the agency is not likely to (1) jeopardize the continued existence of any threatened or endangered species or (2) result in the destruction or adverse modification of the critical habitat of such species. 16 U.S.C. § 1536(a)(2).

25

26

27

28

174.     FEMA has violated its substantive ESA section 7(a)(2) duties by implementing the NFIP in Santa Cruz County in a fashion that is facilitating the adverse modification of critical habitat for the Santa Cruz Listed Species and thereby jeopardizing the continued existence of the Santa Cruz Listed Species.

**SIXTH CLAIM FOR RELIEF**

**FEMA Violation of 16 U.S.C. § 1536(a)(1)**

**Request for Declaratory Relief and Injunction to Compel FEMA
to comply with 16 U.S.C. § 1536(a)(1)**

175.     EcoRights reasserts and realleges the preceding paragraphs above.

176.     The ESA requires that FEMA, in consultation with NMFS and FWS, use its authorities in furtherance of the purposes of the ESA by developing and carrying out programs for the conservation of threatened and endangered species. 16 U.S.C. § 1536(a)(1).

177.     FEMA has violated the requirements of the ESA by its failure to develop and carry out programs for the conservation of federally listed species in Santa Cruz County in consultation with NMFS and FWS.

**PRAYER FOR RELIEF**

WHEREFORE, EcoRights seeks the following relief:

   a.   Declare that FEMA has violated procedural requirements of the ESA by failing to ensure, in consultation with NMFS and FWS, that its action of implementing the NFIP does not jeopardize listed species or destroy or adversely modify designated critical habitat in Monterey County;

   b.   Declare that FEMA has violated substantive requirements of the ESA by failing to ensure that implementation of the NFIP in Monterey County is not likely to jeopardize the continued existence of listed species or result in the destruction or adverse modification of the critical habitat of listed species;

   c.   Declare that FEMA has violated the ESA by failing to use its authorities to develop or carry out programs, in consultation with NMFS and FWS, to conserve federally listed species in Monterey County;

   d.   Issue an injunction requiring FEMA to comply with the ESA through completion of the ESA section 7 consultation process with NMFS and FWS, and to adhere to all requirements imposed by the ESA, and curtailing FEMA's issuance and/or authorization of NFIP actions that promote new development through the NFIP

within the geographic range of listed species in Monterey County until FEMA complies with the ESA;

e.  Declare that FEMA has violated procedural requirements of the ESA by failing to ensure, in consultation with NMFS and FWS, that its action of implementing the NFIP does not jeopardize listed species or destroy or adversely modify designated critical habitat in Santa Cruz County;

f.  Declare that FEMA has violated substantive requirements of the ESA by failing to ensure that implementation of the NFIP in Santa Cruz County is not likely to jeopardize the continued existence of listed species or result in the destruction or adverse modification of the critical habitat of listed species;

g.  Declare that FEMA has violated the ESA by failing to use its authorities to develop or carry out programs, in consultation with NMFS and FWS, to conserve federally listed species in Santa Cruz County;

h.  Issue an injunction requiring FEMA to comply with the ESA through completion of the ESA section 7 consultation process with NMFS and FWS, and to adhere to all requirements imposed by the ESA, and curtailing FEMA's issuance and/or authorization of NFIP actions that promote new development through the NFIP within the geographic range of listed species in Santa Cruz County until FEMA complies with the ESA;

i.  An award of attorney's fees and costs to EcoRights; and,

j.  Such other and further relief as this Court deems just and proper.

Respectfully Submitted,

Dated: February 9, 2017          By:   *Christopher A. Sproul*
                                       _____
                                       Christopher Sproul

                                       *Counsel for Ecological Rights Foundation*

1

**DISCLOSURE OF NON-PARTY INTERESTED ENTITIES OR PERSONS**

2      Based on EcoRights' knowledge to date, pursuant to Civil Local Rule 3-15, the

3 undersigned certifies that, as of this date, other than the named parties, there is no such interest to

4 report.

5                              Respectfully Submitted,

6 Dated: February 9, 2017

7

8                      By:    *Christopher A. Sproul*
                              _____
9                              Christopher Sproul

10                             *Counsel for Ecological Rights Foundation*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28